Reynaldo **DOMINQUEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 50762.

Court of Criminal Appeals of Texas.

Feb. 4, 1976.

Sol Ballas, Dallas, for appellant.

Henry Wade, Dist. Atty., Gary Love, Phil Adams and Gerald Banks, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

KEITH, Commissioner.

Appellant was indicted for murder but the conviction was for voluntary manslaughter and his punishment set by the court at confinement for ten years.

His single ground of error on appeal is that the trial court erred in refusing his requested charge on the right to continue shooting.[1] In reviewing this ground of error we bear in mind the rule of law stated in *Boaz v. State*, 89 Tex Cr.R. 515, 231 S.W. 790, 794 (1920):

> "The necessity of such a charge in a given case depends upon the facts and the manner in which the issues are submitted to the jury."

Appellant and Steven Alvarez, the deceased, had been friends for several years. During the early evening of February 15, 1974, appellant accompanied the deceased, the deceased's girl friend, Sarah Williamson, and Macio and Carrie Trevino to a bar in Dallas where the group drank beer and played pool. Shortly before midnight the group left the bar, stopped by a convenience store and purchased two or more six-packs of beer, and went to appellant's apartment in Trevino's car. There the men played dominoes (with Trevino and deceased continuing to drink beer and appellant drinking milk) until around 4 a. m. The women listened to music for a while before Carrie Trevino went to sleep on appellant's bed.

Macio Trevino agreed to drive the deceased and Williamson to their home, intending to return for his wife. Macio and Williamson went down the stairs of appellant's garage apartment and seated themselves in Trevino's car. Then, according to appellant's testimony, deceased declined to leave but finally did so and appellant followed him down the stairs to lock the door as he left. Deceased then began beating and kicking on the door, breaking the wooden frame and the glass, in an effort to regain entry. After deceased had kicked out a part of the door, Trevino and Williamson heard gunshots but neither knew that deceased had been shot until he got into the car and they saw blood. They immediately headed for the hospital and deceased died shortly after arrival at the hospital.

Carrie Trevino said that she was sleeping when she heard gunshots and awoke to see appellant standing outside the bedroom on a balcony overlooking the front door and driveway.

Appellant testified that deceased became angry when appellant refused to leave with the other members of the group; that after he had locked the door at the bottom of the steps, he saw deceased kick out the door and reach for the inside lock through the hole he had made in the door. He testified that he was afraid that the deceased was going to get inside and beat him up again. Appellant fired down the stairs at the de-

---

1. The requested charge read: "You are instructed, in connection with the right of self-defense, that if the defendant was acting in self-defense when he opened fire at the deceased, then he would have a right to continue firing his pistol at deceased so long as it reasonably appeared to him, at the time, as viewed from his standpoint alone, that all danger had not passed."

ceased but, when the shots did not stop the deceased from trying to get inside, he went through the bedroom door to the balcony and "shot down on the ground" but "didn't shoot at him."

Dr. DiMaio testified that the deceased died of four gunshot wounds penetrating his neck and upper chest.

The court charged broadly upon the law of self defense following § C–9.32A, "New Texas Penal Code Forms," Morrison & Blackwell, p. 110 (1973), and applied the law to the facts as set out in the accompanying footnote.[2] The jury was instructed that regardless of when or where the fatal shots were fired defendant should be acquitted if he was acting in self defense. The requested charge was merely repetitious of that given in the main charge. As stated in *Aranda v. State*, 506 S.W.2d 221, 225 (Tex. Cr.App.1974): "When the charge refused is substantially the same as that given by the court, no harm is shown."

Moreover, we note that under the requested charge, the defendant's use of deadly force would be justified against any use or attempted use of *unlawful force* by the deceased.

As stated in the Practice Commentary following V.T.C.A., Penal Code, Section 9.32:

> "Section 9.32 restores the issue of excessive deadly force to Texas law: if the actor can protect himself short of killing, for example, he must do so on penalty of forfeiting his justification for the unnecessary portion of the deadly force used."

The trial court's charge was sufficiently broad to protect all of appellant's rights and no error was committed in refusing the requested charge. The judgment of the trial court is affirmed.

Opinion approved by the Court.

---

2. The court applied the law to the facts in this manner:

"Now, therefore, bearing in mind the foregoing definitions and instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, Reynaldo Dominquez, in the County of Dallas and State of Texas on or about the 16th day of February, 1974, did then and there intentionally or knowingly kill Steven Alvarez by shooting him with a gun; but you further find from the evidence or have a reasonable doubt thereof that the defendant reasonably believed, as viewed from his standpoint alone that deadly force when and to the degree used, if it was, was immediately necessary to protect himself against the use or attempted use of unlawful force by the said Steven Alvarez; and that at such time a reasonable person in the defendant's situation would not have retreated, you will acquit the defendant and say by your verdict 'not guilty'."