James Arthur **STEVENS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 63965.

Court of Criminal Appeals of Texas, En Banc.

May 16, 1984.

Rehearing Denied July 11, 1984.

William A. Bratton, III, Dallas, for appellant.

Henry Wade, Dist. Atty., Gregory S. Long, Marian Jenkins and James Walker, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

W.C. DAVIS, Judge.

A jury convicted appellant of attempted murder; the court, finding that the enhancement paragraph of the indictment was true, assessed punishment at thirty-five years' confinement.

Appellant asserts five grounds of error: the admission into evidence of oral statements made while under arrest, the prosecutor's use of leading questions with his own witness, inquiry by the prosecutor into details of a prior conviction used for impeachment, and denial of two of appellant's requested charges.

Appellant and the complainant, Lonnie Carter, had known each other for many years. On June 1, 1978, Carter met appellant at about 10:00 a.m. at a recreation center where they both played pool. Carter asked appellant if he wanted to run some errands with him and have dinner at Carter's apartment later that day with Carter and his daughter. Appellant accepted and the two proceeded accordingly.

Carter's daughter and a fourteen-year-old cousin met appellant and Carter at the apartment. During the course of the afternoon, Carter, upset by appellant's behavior toward the cousin, remonstrated with appellant. Carter testified that appellant had talked to her as he would to an older lady, as if he wanted to date her.

Carter drove appellant back to the pool hall. The two continued to argue on the way there and after arriving. Appellant pointed his finger in Carter's face and Carter threw a beer can at him, hitting appellant and spilling some beer on him. Carter then went inside and played pool; appellant went home.

A short time later appellant returned to the pool hall with a .22 pistol in his pocket. The owner of the pool hall, Ernest Milton, testified that he saw appellant coming back and stopped him at the door. Appellant said he just wanted to talk to Carter. Appellant and Carter began arguing again and Milton told them to take the argument outside. Milton pushed appellant outside and Carter agreed to go outside and talk to appellant. The argument continued outside. After a few minutes Carter turned his back to appellant and started to walk back inside the pool hall. Appellant took out the pistol and pulled the trigger. The gun clicked but did not fire and Carter turned to reach for it. Appellant then fired three shots, the bullets hitting Carter in the head, upper chest and back. According to two witnesses, appellant walked away and then came back, walked up to the prostrate Carter, kicked him in the face, and said "This son of a bitch ain't dead yet?" Appellant then ran across the street into a park.

Officer K.W. Beck, a Dallas police officer, testified that, while driving on Oakland Street, he heard a shot and, looking in the direction of the sound, saw two men facing each other. One, whom Beck identified as appellant, had a gun; the other was standing, but holding on to a post. Beck saw appellant fire two more shots and walk away, then walk back and kick the fallen man in the face, then run into the park.

Beck left his car and chased appellant. Beck had his gun drawn and identified himself as a police officer. Appellant looked at him, threw the gun away, and raised his hands. Appellant asked Beck what he wanted him to do. Beck told him to lie on

the ground. As he was getting down on the ground appellant said, "Where did you come from? Why couldn't I have gotten away with it?"

Appellant's version of the shooting is a little different. He claims that Carter started to walk away, spun back toward appellant and reached at him. Appellant claims that he backed up, tripped and almost fell on the ground. At that point, he says, Carter was right on top of him, and he then pulled and fired the gun because he was afraid he would be attacked by Carter's friends and because he wanted to get Carter off of him. Appellant contends that the trial court erred in admitting the statements he made to Officer Beck.

Appellant contends that these statements were made while under arrest and in custody and should have been suppressed. Art. 38.22, Sec. 5, V.A.C.C.P. states:

Sec. 5. Nothing in this article precludes the admission of a statement made by the accused in open court at his trial, before a grand jury, or at an examining trial in compliance with Articles 16.03 and 16.04 of this code, or of a statement that is the res gestae of the arrest or of the offense, or of a statement that does not stem from custodial interrogation, or of a voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness, or of any other statement that may be admissible under law.

Appellant's statements are admissible in either of two ways: first, the statements were voluntary statements, made while in custody but not in response to interrogation; *Sanchez v. State*, 589 S.W.2d 422 (Tex.Cr.App.1979); *Earnhart v. State*, 582 S.W.2d 444 (Tex.Cr.App.1979); second, the statements fit the res gestae exception of Art. 38.22, Sec. 5. Appellant's statement, made as he was fleeing the scene and was surprised by Beck minutes after the shooting, clearly qualifies as a res gestae statement. *Gordon v. State*, 608 S.W.2d 638 (Tex.Cr.App.1980); *Nastu v. State*, 589 S.W.2d 434 (Tex.Cr.App.1979).

The court properly admitted the statement. The ground of error is overruled.

Appellant next complains that the prosecutor used leading questions during the direct examination of a witness. Ernest Milton testified on direct examination that Carter had turned "kind of sideways" to go back into the pool hall when appellant pulled the gun and tried to fire, but the gun clicked and did not fire. He said that after that click Carter turned and tried to grab the gun and appellant shot him three times. On cross-examination Milton testified to essentially the same facts when the defense counsel sought to clarify his testimony:

Q. You said, I believe—if I'm correct—on direct examination you said that then Lonnie Carter started to turning around and walk off?

A. Right.

Q. All of a sudden spun back around and Stevens pulls his gun out?

A. He spun around like that.

Q. And it clicked once?

A. Correct.

Q. Jitters goes for it?

A. Correct.

Q. It's fired and fired again?

A. Correct.

Q. And fired again and then Jitters slumps to the ground?

A. Three times.

Q. But it was after Jitters turned around that it clicked?

A. He hadn't turned all the way around.

On redirect the testimony of which appellant now complains was the following:

Q. Mr. Milton, let me just correct or go over one thing with you that Mr. Bratton said. I want to be clear on that. Just before the gun was fired—when Lonnie Carter was walking into your place, has turned around from James Arthur Stevens, right?

A. Correct.

Q. Now, is that when he pulls out the gun and clicks it?

A. When he, Lonnie—you know, he started to walk away and—

Q. As he started to walk away—

A. Right.

Q. —is that when James Arthur Stevens pulls the gun?

A. Correct.

Q. And it clicks for the first time, is that right?

A. Correct.

Q. It is after the click that Lonnie Carter turns around and tries to grab the gun?

A. That's correct.

MR. BRATTON: Your Honor, I object to him, the Prosecutor, at this time leading the witness and getting him to tell the story exactly the way he wants it told. It's his witness. He should ask the questions and let the witness tell the story.

MR. WALKER: I think Mr. Bratton asked some questions there that I believe I have a right to respond to.

MR. BRATTON: he is trying—

THE COURT: I think you've covered it pretty well, Counsel. Let's move along.

Q. (By Mr. Walker) It wasn't like Mr. Bratton said—that Lonnie Carter spun around?

A. (By the Witness) No, he didn't spin around.

Q. —and went after James Arthur Stevens and that is when the gun got pulled out?

A. No.

MR. BRATTON: I continue to object to the Prosecutor testifying and putting the story the way he wants it. The witness has already testified. Ask him what happened. You don't need to testify.

MR. WALKER: I'm asking questions, if I might.

THE COURT: Let's move along.

Q. (By Mr. Walker) What happened first? Let's do it this way. Did Lonnie Carter turn around or James Arthur Stevens pull the gun first?

A. (By the Witness) James Stevens pulled the gun first and when he pulled the gun he clicked it. Lonnie was walking away. When Lonnie heard the click, Lonnie spun around and he was trying to get up to Stevens when the gun fired.

We overrule appellant's ground of error for several reasons. First, the objection was made only after several questions and answers now complained of were already given and unobjected to. An objection must be timely, i.e., at the earliest opportunity. *Marini v. State*, 593 S.W.2d 709 (Tex.Cr.App.1980); *Crocker v. State*, 573 S.W.2d 190 (Tex.Cr.App.1978); second, appellant never secured a ruling on his objection to the leading—an adverse ruling is necessary to preserve error; *Bryant v. State*, 570 S.W.2d 921 (Tex.Cr.App.1978); finally, the redirect had no material effect on the witness' prior testimony. Milton remained quite consistent in his testimony. Appellant's claim that the questions supplied the witness with a false memory of critical facts is without support in the record.

Appellant acknowledges that the use or prohibition of leading questions rests in the discretion of the court. *Navajar v. State*, 496 S.W.2d 61 (Tex.Cr.App. 1973); *Ballew v. State*, 452 S.W.2d 460 (Tex.Cr.App.1970). When the court allows a confusing or incorrect impression to be clarified by the use of leading questions reversible error exists only if appellant was unduly prejudiced by the questions. *Ballew*, supra. Given the consistency of the witness' testimony, we see no harm to appellant and no abuse of the court's discretion in allowing the leading questions.

The ground of error is overruled.

Appellant contends that the trial court erred in allowing the prosecutor to inquire into the details of a prior conviction used for impeachment. Appellant testified on direct examination that he had been previously convicted of assault with intent to commit murder and that he was at that time made fully aware of the consequences of that type of action. On cross-examination the questioning continued:

Q. Just so that the jury understands, back in 1973 (sic) you were guilty of an assault with intent to commit murder and sentenced to twenty years in the Texas Department of Corrections, is that correct?

A. That's correct.

Q. So you were given twenty years in '63 for assault with intent to commit murder, is that right?

A. Right.

Q. So this is not your first time, is it—to have somebody fall as a result of your actions?

MR. BRATTON: Your Honor, I object to that question. It's assuming a fact that is not in evidence. He has admitted the prior conviction and that is as far as the State can go into anything regarding that conviction.

THE COURT: Overrule the objection.

Q. (By Mr. Walker) This is not the first time someone has fallen as a result of your actions is it?

A. (By the Defendant) What do you mean by "falling"?

Q. Where you have assaulted somebody with intent to commit murder?

A. I have gotten in trouble before.

Q. For the same thing, right?

A. Something similar.

Q. They used to call it assault with intent to commit murder and now it's attempted murder, right?

A. Then it was assault to murder.

Q. Right. That's what you were convicted of and given twenty years in the Texas Department of Corrections?

A. Right.

■■■ Appellant is correct in asserting that the State is not permitted to bring before the jury the details of an offense which resulted in a prior conviction, the existence of which is admitted against the accused. *Murphy v. State*, 587 S.W.2d 718 (Tex.Cr.App.1979). The fact of conviction was admissible in this case to impeach appellant's testimony, Art. 38.29, V.A.C.C.P. We do not agree that the prosecutor inquired into details of the offense underlying that conviction. Several times the prosecutor simply repeated that appellant had been convicted of assault with intent to commit murder, which crime was the same as attempted murder, as it is called today. He did not inquire into details of the offense.

The ground of error is overruled.

In his fourth ground of error appellant contends that the court erred in refusing his requested charge that:

... in connection with the right of self-defense, that if you find from the evidence that the defendant was acting in self-defense in the first instance when he opened fire on Lonnie Carter with his pistol, or if you have a reasonable doubt thereof, then you are instructed that not only may he stand his ground and shoot, but he would have a right to pursue Lonnie Carter and continue shooting him so long as it reasonably appeared to him, at the time, that all danger had not passed as viewed from the defendant's standpoint.

The court charged broadly on self-defense under the statutory language on V.T. P.C., Secs. 9.31 and 9.32, and included instructions on actual and apparent apprehension of danger. The court also included an instruction applying the law of self-defense [1] to the facts.

---

1. Application paragraph:

Now if you find and believe from the evidence beyond a reasonable doubt that the defendant, James Arthur Stevens, on or about the 1st day of June, 1978, in the county of Dallas and State of Texas did then and there shoot Lonnie Carter with a pistol, as alleged in the indictment, but you further find or have a reasonable doubt thereof that the defendant reasonably believed, as viewed from his standpoint alone, that deadly force when and to the degree used, if it was, was immediately necessary to protect himself against the use or attempted use of unlawful deadly force by the said Lonnie Carter and that at such time a reasonable person in the defendant's situation would not have retreated, then you will acquit the defendant and say by your verdict "not guilty."

■ The requested charge was substantially the same as the charge given by the court. No harm is shown in the refusal of appellant's requested charge. See *Dominquez v. State*, 532 S.W.2d 95 (Tex.Cr.App. 1976); *Teal v. State*, 543 S.W.2d 371 (Tex. Cr.App.1976).

The ground of error is overruled.

■ Appellant contends finally that the court erred in refusing to include a charge to the jury on the offense of attempted voluntary manslaughter. Two established rules apply to charges on the offense of voluntary manslaughter. First, an instruction on manslaughter is properly refused where there is no evidence whatsoever of adequate cause. *McCartney v. State*, 542 S.W.2d 156 (Tex.Cr.App.1976). Second, in *Hobson v. State*, 644 S.W.2d 473 (Tex.Cr. App.1983) we quoted from *Moore v. State*, 574 S.W.2d 122, 124 (Tex.Cr.App.1978) which said:

> The credibility of evidence and whether it is controverted or conflicts with other evidence in the case may not be considered in determining whether a defensive charge or an instruction on a lesser included offense should be given. When evidence *from any source* raises a defense issue or raises an issue that a lesser included offense may have been committed ... the issue must be submitted to the jury. It is then the jury's duty, under the proper instructions, to determine whether the evidence is credible and supports the defense or the lesser included offense. (citations omitted).

■ Voluntary manslaughter[2] differs from murder in that the actions causing the death to occur under the immediate influence of sudden passion arising from an adequate cause. *Braudrick v. State*, 572 S.W.2d 709, 710 (Tex.Cr.App.1978).

Appellant does not specify what evidence he thinks raises "sudden passion" and "adequate cause."[3] We do not believe any evidence raised the issue. Appellant's own testimony raises self-defense, but makes no claim that appellant had been emotionally aroused at the time of the shooting and describes no cause for such arousal. The testimony of the other witnesses portrays an act that can only be described as cold-blooded.

■ The trial court did not err in refusing appellant's requested charge on attempted voluntary manslaughter. See *Hobson*, supra; *Luck v. State*, 588 S.W.2d 371 (Tex.Cr.App.1979); *Cerda v. State*, 557 S.W.2d 954 (Tex.Cr.App.1977); *McCartney*, supra.

■ Appellant contends in a pro-se brief that he pled "not true" to the enhancement paragraph in the indictment and that the prior conviction alleged was a void one. The record reflects very clearly that appellant pled "true" to the enhancement allegation. This ground of error is overruled.

The judgment is affirmed.

TEAGUE and MILLER, JJ., dissent.

CLINTON, J., not participating.

---

**2.** Section 19.04(a):

> (a) A person commits an offense if he causes the death of an individual under circumstances that would constitute murder under Section 19.02 of this code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause.

**3.** Sec. 19.04(b) and (c):

> (b) 'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.
> (c) 'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.