In The


 

Court of Appeals


 

Ninth District of Texas at Beaumont



____________________



NO. 09-05-498 CR


____________________





CHRISONDATH BADALL, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 75th District Court


Liberty County, Texas


Trial Cause No. CR 24,834






 OPINION


 A jury convicted Chrisondath Badall of the murder of Ramdath Durgapersad. See
Tex. Pen. Code Ann. § 19.02(b) (Vernon 2003). The jury assessed punishment at fifty-five
years' confinement in the Texas Department of Criminal Justice, Institutional Division. 

 Badall raises four issues on appeal. Issues one and two address the testimony of a
district judge who testified as a rebuttal witness for the State. Issue three concerns testimony 
about a statement Badall made while in police custody. Issue four asserts that the
prosecution's questions were a comment on Badall's right to remain silent. We overrule
Badall's issues and affirm his conviction. 

Background

 Badall owned a tire repair business in Liberty, Texas known as Frank's Tire Shop. 
Ramdath Durgapersad bought Frank's from Badall and agreed to pay him $150,000.00 for
the business. Durgapersad initially paid Badall $100,000.00, and agreed to pay the remaining
balance in six months from the date of sale, but never paid. 

 Badall's case centered on his claim that he shot Durgapersad in self-defense. On the
afternoon of January 8, 2004, Badall went to Frank's Tire Shop to see if Durgapersad would
begin paying the remaining balance of the purchase price. Badall claims that after he
approached Durgapersad, Durgapersad cursed him. Durgapersad then pulled a gun from his
waistband. According to Badall, Durgapersad attempted to shoot him but his gun did not
fire. At that point, Badall pulled his gun from his pocket, fired twice, and then ran to his
truck and left. Badall testified that when he left, he did not know whether Durgapersad had
been wounded by the gunshots. Durgapersad subsequently died.Character Testimony By District Judge

 In the rebuttal portion of its case, the State called Judge Chap Cain. Judge Cain
testified regarding Badall's truthfulness and offered his opinion that Badall was untruthful.
Badall's cross-examination demonstrated that Judge Cain's opinion was based strictly on
Badall's appearances in Judge Cain's court on other cases.

 Badall argues that Judge Cain's testimony deprived him of his rights to an impartial
jury, to take the stand in his own defense, and to confront the witnesses against him. While
the judge's testimony as a character witness may have been subject to objection, when the
State called Judge Cain as a witness, the following occurred:

 [Prosecution]: Call Chap Cain.


 (At the bench, out of hearing of the jury)


 The Court: Look, this is for rebuttal and rebuttal only. You can only rebut
what he said that you think that was incorrect. I'm not going to let you go into
the whole scenario involving those trials.


[Prosecution]: We don't intend to, your Honor.


[Prosecution]: Not what our intention is, Judge.


The Court: Okay.


[Defense Counsel]: Just for a record, I would object to Judge Cain coming in
here with his black robe on.


The Court: He doesn't wear a robe.


[Defense Counsel]: Okay. 


 The appellate rules of procedure and settled law provide that to preserve error for
appellate review, a party must make a timely and specific objection or motion at trial after
an adverse ruling by the trial court. Tex. R. App. P. 33.1(a); Tucker v. State, 990 S.W.2d 261,
262 (Tex. Crim. App. 1999). The rules of evidence also require an objection to a ruling
admitting evidence. Tex. R. Evid. 103(a)(1). Failure to preserve error at trial waives the
later assertion of that error on appeal. Ibarra v. State, 11 S.W.3d 189, 197 (Tex. Crim. App.
1999). In fact, almost all error, even constitutional error, is waived if the appellant fails to
object. See Tex. R. App. P. 33.1(a); Dreyer v. Greene, 871 S.W.2d 697, 698 (Tex. 1993);
Aldrich v. State, 104 S.W.3d 890, 894-95 (Tex. Crim. App. 2003). There are two exceptions
to the general rule involving violations of rights that are either "waivable-only" or "absolute
systemic requirements." Aldrich, 104 S.W.3d at 895. "Examples of rights that are waivable-only include the rights to the assistance of counsel and the right to trial by jury." Saldano v.
State, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002). Badall does not argue that his complaints
fall within these exceptions. 

 Badall's complaint concerns alleged error in the admission of evidence. "We have
consistently held that the failure to object in a timely and specific manner during trial forfeits
complaints about the admissibility of evidence." Saldano, 70 S.W.3d at 889 & nn. 73 & 74
(collecting cases of waiver for lack of objection). "This is true even though the error may
concern a constitutional right of the defendant." Id. 

 While we do not condone the use of a judge as a character witness when the judge's
knowledge comes solely from his judicial function, the question that must first be addressed
is whether Badall was required to make a timely, specific objection at trial to the judge's
testifying as a character witness. We conclude that timely and specific objections consistent
with the objections now raised on appeal were required by Texas law. 

 Badall's objection to Judge Cain's testifying before the jury in his black robe is not 
consistent with the objections he now urges on appeal. As a result, he has waived his right
to appellate review of any error associated with Judge Cain's testifying as a character witness
at his trial. Reyna v. State, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005); Ibarra, 11 S.W.3d
at 197; Williams v. State, 622 S.W.2d 116, 119 (Tex. Crim. App. 1981). We overrule
Badall's first and second issues. See Tex. R. App. P. 33.1. Statement in Police Custody

 Badall complains on appeal that the trial court erred in allowing Officer Cedric
McDuffie to testify to a statement Badall made to him while being transferred from Baytown
to Liberty after his arrest. We note that upon his arrest, around 7:30 p.m. on the day of the
shooting, Sergeant Park gave Badall his Miranda (1) warnings. Later that evening, after Badall
was taken to the City of Baytown's jail, and during the process of transferring Badall to the
City of Liberty's custody, McDuffie began conversing with Badall and asked Badall how he
was doing. Badall responded that he was doing okay and asked McDuffie if he still worked
for the City of Liberty's police department. McDuffie indicated that he did and asked Badall
where he lived and how many businesses he owned. Badall responded, and then inquired as
to Durgapersad's condition. McDuffie told Badall that Durgapersad would survive. In
response, Badall said, "I would have to get the job done right the next time." 

 Badall filed a pre-trial motion to suppress the testimony in issue. The trial court
granted the motion to suppress, and when the State called McDuffie as a witness during its
case-in-chief, the State did not attempt to introduce McDuffie's testimony regarding Badall's
statement. Subsequently, Badall testified in his own defense. In response, the State called
McDuffie as a rebuttal witness and Badall renewed his objection to McDuffie's testimony
about his statement. The State advised the judge that it intended to offer Badall's statement
for purposes of impeachment. McDuffie subsequently testified that Badall told him that he
would "have to get the job done right the next time." 

 On appeal, Badall complains that his statement to McDuffie constituted custodial
interrogation and should not have been admitted over his objection. In response, the State
argues that the statement was not a product of custodial interrogation. 

 Article 38.22 of the Code of Criminal Procedure governs the procedure involved to
admit "statements made as a result of custodial interrogation" in criminal cases. Tex. Code
Crim. Proc. Ann. art. 38.22, § 3 (Vernon 2005). Miranda also places limits on the use of
statements produced by custodial interrogations. 384 U.S. at 476-77. Thus, we must first
determine whether Badall's statement was the product of a custodial interrogation.

 Even though made when in custody, a defendant's voluntary statements that are not
made in response to interrogation are not excluded by either article 38.22 or Miranda. See
Tex. Code Crim. Proc. Ann. art. 38.22, § 5; Miranda, 384 U.S. at 476-77. In Stevens v.
State, 671 S.W.2d 517, 519-20 (Tex. Crim. App. 1984), the defendant was stopped after
committing a crime. At that point, the defendant asked a police officer what he wanted him
to do, and the policemen requested that he lie down. Id. In so doing, the defendant asked
the officer "Why couldn't I have gotten away with it?" Id. at 520. The Court of Criminal
Appeals held the defendant's statement admissible despite the provisions of article 38.22
because it was a voluntary statement made in custody but not in response to interrogation. 
Id. 

 The U.S. Supreme Court has also approved the admission of voluntary statements
made in custody that are not the product of interrogation. Rhode Island v. Innis, 446 U.S.
291, 299-300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980) (holding that Miranda did not
prohibit voluntary statement that was not made in response to a question by police even
though the defendant was in police custody.) To be suppressed, the incriminating response
must have been "the product of words or actions on the part of the police that they should
have known were reasonably likely to elicit an incriminating response." Innis, 446 U.S. at
303. 

 There is no evidence that McDuffie reasonably anticipated an incriminating response
to his statement regarding Durgapersad's condition. Badall's statement was made in
response to McDuffie's answer to Badall's question; it was not the product of a question by 
McDuffie to Badall. "That the suspect was neither expressly nor implicitly questioned by
police officers at the time the statement was made often determines the voluntariness of a
statement." Ramirez v. State, 105 S.W.3d 730, 741 (Tex. App.-Austin 2003, no pet.) (citing
Stevens, 671 S.W.2d at 520; Sanchez v. State, 589 S.W.2d 422, 423 (Tex. Crim. App. 1979);
Earnhart v. State, 582 S.W.2d 444, 448 (Tex. Crim. App. 1979); Davis v. State, 780 S.W.2d
945, 947 (Tex. App.-Fort Worth 1989, pet. ref'd)). There is also no evidence that McDuffie 
reasonably anticipated an incriminating response from his prior questions about Badall's
residence or how many businesses he owned. Questions about a person's address or
employment are normally attendant to administrative "booking" procedures and do not
constitute custodial interrogation. See generally Cross v. State 144 S.W.3d 521, 524, n. 5
(Tex. Crim. App. 2004). We hold that Badall's statement to Officer McDuffie was not the
product of custodial interrogation. As a result, it was not error to admit it. 

 Furthermore, Badall's statement was admissible to impeach the version of the events
to which Badall testified as a witness. The Court of Criminal Appeals has indicated
impeachment is a permissible use of a statement that would otherwise be excluded by the
Miranda rule. Johnson v. State, 169 S.W.3d 223, 240 (Tex. Crim. App. 2005). According
to the State, Durgapersad was unarmed when Badall walked up to him, pulled out a gun, and
shot him. In contrast, according to Badall, he was no longer angry that Durgapersad had
failed to pay his debt. Badall testified that he walked up to Dugapersad, said "Happy New
Year," and in return Durgapersad cursed him and pulled out his gun. In response, Badall 
pulled his own weapon in self-defense and attempted to shoot Durgapersad's gun from his
hand. Badall stated that at the time of the incident, he was unaware if any of his bullets
struck Durgapersad. 

 Under Badall's version of the events, Durgapersad's conduct precipitated the
altercation. However, Badall's statement that he would have to do a better job next time
impeaches his position that he bore no ill-will toward Durgapersad and that the altercation
arose solely from Durgapersad's conduct. When a defendant takes the witness stand, his
prior statements can be used to impeach his credibility, even if the statements are the by-product of custodial interrogation. Harris v. New York, 401 U.S. 222, 226, 91 S.Ct. 643, 646,
28 L.Ed.2d 1 (1971). "The shield provided by Miranda cannot be perverted into a license
to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent
utterances." Id.

 Impeachment is an exception to Miranda's general prohibition on the use of custodial
statements. Johnson, 169 S.W.3d at 240, n. 93. Moreover, article 38.22 provides an
exception that allows the admission into evidence of a statement that has bearing upon the
credibility of the accused as a witness. Tex. Code Crim. Proc. Ann. art 38.22 § 5. (2) 

 Badall's statement tends to show that he intended to kill Durgapersad and thus, makes
his version of the events less credible. The statement that Badall made to McDuffie was
admitted after Badall testified to his version of the events. A statement admitted to impeach
a defendant's prior testimony is admissible despite the absence of a Miranda warning. (3) We
find no error in the court's admission of Badall's statement and overrule issue three.

Comments on Badall's Silence


 The use of a defendant's post-arrest silence violates the right of the accused to remain
silent. Doyle v. Ohio, 426 U.S. 610, 617-18, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); Dinkins
v. State, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995). Badall complains of four questions 
that he asserts embrace his right to remain silent. In this case, the State contends that the
defendant's objections were not timely and therefore, any error was not preserved for our
review. 

 All four instances that Badall complains of occurred during his cross-examination. 
The first of these questions occurred when the State examined Badall about the events that
led up to his initial arrest at a restaurant on the evening of the crime. 

 [Prosecution]: You came outside because you knew it was the police?


 [Badall]: Yes, sir.


 [Prosecution]: You knew they were going to arrest you?


 [Badall]: Yes, sir.


 . . .


 [Prosecution]: And, at that time, you explained to the police that
[Durgapersad] had pulled a gun on you?


 [Badall]: I didn't tell no police that.


 [Defense Counsel]: Objection. May we approach the bench, your Honor?


 [Discussion outside the hearing of the jury, during which the Court states that
the objection is sustained.] 


The second instance cited by Badall followed immediately after the judge sustained the prior
objection. 

 [Prosecution]: Mr. Badall, when you first came out of the building and
you first approached the police, prior to the time that you
were being taken into custody, were you saying
something to the police?


 [Badall]: I can't really remember. I say something to them, but I
can't remember what I say.


 [Prosecution]: In fact, you told them, you said, "I did it. . . . I did what
you think I did." Isn't that what you told them?


 [Badall]: I can't remember, sir.


 [Prosecution]: But you said something to them?


 [Defense Counsel]: If the Court please, I'm going to object now to partial
recitation of what is alleged to have been said by the
accused because--


 The Court: Y'all approach the bench just a second.


 [Discussion outside the hearing of the jury, during which the attorneys discuss
what another witness testified that Badall said, and the Prosecution agrees to
rephrase the question.]


 [Prosecution]: Mr. Badall-


 [Badall]: Yes, sir


 [Prosecution]: -when you came out of the Nio's restaurant, and you
were approaching the police, isn't it true that you said
something to this effect: "Whatever you think I did, I
did. They had nothing to do with it"?


 [Badall]: I can't recall what I said. But at one time I remember a
policemen ask me if I want to give a statement or I want
to talk to him.


The third instance about which Badall complains occurred while the State questioned him
regarding his interaction with McDuffie.

 [Prosecution]: In fact, [McDuffie] was in a City of Liberty Police
Department uniform, wasn't he?


 [Badall]: Yes, sir.


 [Prosecution]: So you knew he was a City of Liberty policem[a]n?


 [Badall]: I knew him to be a policem[a]n before.


 [Prosecution]: So, you didn't tell him that [Durgapersad] had a gun and
pulled it on you?


 [Defense Counsel]: Object, now, if the Court please. The witness has just
said he didn't have any discussion with Officer McDuffie
concerning Mr. Durgapersad.


 [Prosecution]: Judge, this is a matter of cross-examination. This
gentlemen has said-


 The Court: I know, but aren't we getting in-pretty close to some
constitutional issues?


 [Prosecution]: I don't think so, your Honor, not during this time. He
wasn't being interrogated. The gentlemen said he
wasn't.

 [Defense counsel]: He's being asked questions, your Honor. Under the law
we submit, respectfully, that that is an interrogation.


 [Prosecution]: I'm asking what questions he asked.


 The Court: I think, if I'm not mistaken, [Prosecution], you asked him
about conversation that he had with them talking to each
other, and I think he answered it.


 [Prosecution]: That there was no discussion of it, your Honor. Is that
your recollection?


 The Court: Yes, sir.


 [Prosecution]: Okay.


 The Court: Sustain the objection.


The fourth instance about which Badall complains on appeal occurred immediately
afterwards.

 [Prosecution]: So Mr. Badall, you could talk that night, couldn't you?


 [Badall]: Yes, sir.


 [Prosecution]: So you didn't feel it necessary to tell [McDuffie] what
had happened, did you?


 [Badall]: I tell him--


 [Prosecution]: Yes or no.


 [Badall]: No, sir.


 [Defense counsel]: Excuse me. I'm going to object, if the Court please. I
think that offends the most recent ruling of the Court.


 The Court: I think it does, [Prosecution]. You all approach
just a second and let me--


 [After a discussion outside the jury's presence, the trial court sustains the
objection.] 


 Although Badall asserted objections to these questions, he failed to pursue any of his
objections to an adverse ruling. His objections to these questions were either sustained or
the prosecution rephrased its question and Badall made no objection to the question as
rephrased. After the trial court sustained his objections, Badall did not request any
instructions to the jury to disregard the witness's testimony nor did he request a mistrial.

 Ordinarily, a party must pursue an objection until he receives an adverse ruling. 
Anderson v. State, 932 S.W.2d 502, 507 (Tex. Crim. App. 1996); Harris v. State, 784 S.W.2d
5, 12 (Tex. Crim. App. 1989). A party's failure to object in a timely and specific manner
during trial forfeits complaints about the admissibility of evidence. Saldano, 70 S.W.3d at
889. Because Badall's objection to the first, third and fourth lines of the State's questions
were sustained, and he requested no further relief, nothing has been preserved for review on
appeal. 

 With respect to the second line of questions, Badall never obtained a ruling on his
objection and the State rephrased the objectionable question. Badall lodged no additional
objection. A party is required to object every time allegedly inadmissible evidence is offered
or his objections are not preserved. Hudson v. State, 675 S.W.2d 507, 511 (Tex. Crim. App.
1984). Badall's complaint regarding the State's second line of questions to Badall was not
preserved. 

 In summary, the complaints now asserted by Badall on appeal were not preserved for
appellate review. We overrule Badall's issues and affirm his conviction.

 AFFIRMED. 


 ________________________________

 HOLLIS HORTON

 Justice


Submitted on October 5, 2006

Opinion Delivered January 31, 2007

Publish


Before McKeithen, C.J., Gaultney and Horton, JJ. 
1. Miranda v. Arizona, 384 U.S. 436, 471-72, 86 S.Ct. 1602, 1626-27, 16 L.Ed.2d
694 (1966).
2. "Nothing in this article precludes the admission of a statement made by the accused
in open court at his trial . . . or of a statement that does not stem from custodial
interrogation, or of a voluntary statement, whether or not the result of custodial
interrogation, that has a bearing upon the credibility of the accused as a witness . . . ." 
3. In light of our disposition of this issue, we need not address whether the Miranda
warning given earlier that evening by Sergeant Park was sufficient or determine whether
Badall invoked his right to counsel prior to making the voluntary statement in issue.