**Opinion issued August 13, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-23-00294-CR**

_____

**TRISTEN OMAR ADDISON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 239th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 85966-CR**

---

## O P I N I O N

A jury convicted Appellant Tristen Omar Addison of possession of a controlled substance with intent to deliver and sentenced him to 25 years' imprisonment.[1] On appeal, Addison claims the trial court erred in two ways, by

---

[1] _See_ TEX. HEALTH & SAFETY CODE § 481.115(c).

(1) denying his motion to suppress statements he made while in custody and (2) ordering him to repay his court-appointed attorney's fees and costs. Because Addison's spontaneous statements were not the product of interrogation, we affirm the trial court's denial of the motion to suppress. And because the trial court ordered Addison to repay his court-appointed attorney's fees without inquiry into his ability to pay and without evidence that he could pay, we modify the judgment to delete the attorney's fees assessment.

## Background

In 2018, the Lake Jackson Police Department narcotics team began investigating Addison. One early morning, a Special Response Team broke the door down, and police entered Addison's apartment with a search warrant. Investigator M. Christopoulos read Addison *Miranda*[2] warnings. Addison acknowledged each right and waived it. Christopoulos asked Addison if there was "anything in here [he] need[ed] to know about," and Addison responded, "No, sir." Police searched the one-bedroom apartment with Addison in handcuffs.

Although police did not question Addison further, he made comments referring to his backpack as his "survival kit," and blurted out that he was not "a big-time dope dealer and that he's just trying to make it in this world." From the

---

[2]    *Miranda v. Arizona*, 384 U.S. 436 (1966).

backpack, police recovered crack cocaine, powder cocaine, a razor blade, a jar of marijuana, a marijuana blunt, and a large cellophane baggie with smaller baggies containing marijuana. Police also discovered a scale and $2,179 in cash. After the search, police arrested Addison.

A grand jury indicted Addison for possession with intent to deliver between four and 200 grams of cocaine. Based on previous convictions, Addison was subject to a higher sentence as a habitual offender if the jury found the enhancement paragraphs true.

Addison moved to suppress his statements and any evidence seized. During the hearing, Addison argued that the officer failed to record the waiver of rights as required by Texas Code of Criminal Procedure article 32.28 and the United States Constitution. The State responded that the statements were not made during any custodial interrogation and were not subject to the recording requirements. The trial court denied Addison's motion to suppress.

The jury found Addison guilty of the lesser offense of possession of a controlled substance between one and four grams and sentenced him as a habitual offender to the minimum of 25 years' imprisonment.

## Motion to Suppress: Custodial Statements Made Not in Response to Questioning

Addison contends that his statements admitting the backpack was his and that he was not a "big time drug dealer" were inadmissible because the police did not

record his receipt and waiver of *Miranda* warnings as required for custodial interrogations under Texas Code Criminal Procedure article 38.22.

## A.    Standard of Review

We review a trial court's denial of a motion to suppress for an abuse of discretion under a bifurcated standard. *See Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021). We give almost total deference to the trial court's determination of historical facts supported by the record and review de novo the legal determination of whether the person was in custody. *State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013).

When the trial court denies a motion to suppress without any findings of fact, we view the evidence in the light most favorable to the ruling and assume the trial court made implicit findings of fact that support its ruling if the record supports those findings. *Wexler*, 625 S.W.3d at 167. We will uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008).

## B.    Custodial Interrogation

Under *Miranda* and article 38.22, statements elicited by custodial interrogation are inadmissible unless the accused is first warned that they have the right to remain silent, their statement may be used against them, and they have the right to hire a lawyer or have a lawyer appointed. *See Miranda v. Arizona*, 384 U.S.

436, 478–79 (1966); TEX. CODE CRIM. PROC. art. 38.22. Article 38.22 also requires warning the accused that they have the right to terminate the interview at any time. *See* TEX. CODE CRIM. PROC. art. 38.22, § 2(a)(5); *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). The warnings, the accused's voluntary waiver of their rights, and the accused's statement made during custodial interrogation must be electronically recorded. TEX. CODE CRIM. PROC. art. 38.22, § 3.

"Custody" for purposes of article 38.22 is consistent with the meaning of "custody" for purposes of *Miranda*. *Herrera*, 241 S.W.3d at 526. A custody determination requires evaluating: (1) the circumstances of the interrogation and (2) whether a reasonable person there would have felt that they were not free to leave. *Wexler*, 625 S.W.3d at 167 (citing *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)). The "reasonable person" standard presupposes an innocent person. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996). To determine whether an individual is in custody, we focus on the objective circumstances of the questioning, not on the subjective views of either the interrogating officer or the suspect. *See Stansbury v. California*, 511 U.S. 318, 322 (1994); *In re D.J.C.*, 312 S.W.3d 704, 712 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

The Court of Criminal Appeals has outlined four general situations that may be custodial. The first three situations are when (1) the suspect is physically deprived of their freedom in any significant way; (2) law enforcement tells the suspect not to

leave; or (3) law enforcement creates a situation that would lead a reasonable person to believe that their freedom of movement has been significantly restricted. *Wexler*, 625 S.W.3d at 167–68 (citing *Dowthitt*, 931 S.W.2d at 254). In these three situations, the restriction on a suspect's freedom must be "to the degree associated with an arrest," not just that of an investigative detention. *Id.* In the fourth situation, custody is established when probable cause has been manifested to the suspect, law enforcement did not tell the suspect they can leave, and, when considering the surrounding circumstances, a reasonable person would believe they are restricted to a degree associated with arrest. *Id.*

To be subject to the recording requirement, article 38.22 requires not just custody, but interrogation during custody. TEX. CODE CRIM. PROC. art. 38.22, § 5 ("Nothing in this article precludes the admission of a statement . . . that is the res gestae of the arrest or of the offense, or . . . does not stem from custodial interrogation, or [ ] a voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness, or of any other statement that may be admissible under law.").

Statements that are integral to the charged offense or arrest are often called res gestae. *See United States v. Caldwell*, 586 F.3d 338, 346 (5th Cir. 2009) (charged offense); *United States v. Navarro*, 169 F.3d 228, 233 (5th Cir. 1999) ("Evidence that is 'inextricably intertwined' with the evidence used to prove the crime

6

charged . . . is admissible so that the jury may evaluate all the circumstances under which the defendant acted." (internal quotations omitted)); *Galloway v. State*, 778 S.W.2d 110, 112–13 (Tex. App.—Houston [14th Dist.] 1989, no pet.) (res gestae of an arrest is a statement integral to the arrest itself). A res gestae statement is made "in response to a startling event, spontaneously or impulsively, without time for reflection or contrivance." *Davis v. State*, 780 S.W.2d 945, 947 (Tex. App.—Fort Worth, 1989, writ ref'd).

Article 38.22 also excludes other statements that are not the product of interrogation. Voluntary statements made while in custody but not in response to interrogation are admissible without a recording. *Stevens v. State*, 671 S.W.2d 517, 520 (Tex. Crim. App. 1984) (en banc); *see* TEX. CODE CRIM. PROC. art. 38.22, § 5.

### 1.    Custody

The State does not dispute that Addison was in custody. A Special Response Team had broken down his apartment door early in the morning and handcuffed him. He was under arrest. There was no one other than police and Addison in the apartment.

Applying the first *Dowthitt* situation, viewing the evidence in the light most favorable to the ruling and examining the totality of the circumstances, we conclude that Addison's freedom of movement was restrained to the degree associated with a formal arrest. *Wexler*, 625 S.W.3d at 167; *Dowthitt*, 931 S.W.2d at 255. Handcuffed

7

in his apartment, surrounded by law enforcement, and under arrest, Addison was in custody when he said the backpack was his and he was just a small-time drug dealer. *Wexler*, 625 S.W.3d at 167. That leaves whether Addison's custodial statements resulted from interrogation.

## 2. Interrogation

"Custodial interrogation" is questioning by police after a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. Not limited to actual questions, "interrogation" can encompass police speech or conduct which "the police should know are reasonably likely to elicit an incriminating response from the suspect." *Alford v. State*, 358 S.W.3d 647, 653 (Tex. Crim. App. 2012) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). Questioning that is a normal incident of arrest and custody is not interrogation. *See id.*; *McCambridge v. State*, 712 S.W.2d 499, 505–06 (Tex. Crim. App. 1986). Not all statements from a suspect in custody, therefore, result from interrogation.

After Investigator Christopoulos read Addison *Miranda* warnings and Addison waived his rights, Christopoulos asked Addison if there was "anything in here [he] need[ed] to know about," and Addison responded, "No, sir." Then Addison made the incriminating statements.

The record does not reflect how much time passed between the arrest and Addison's statements referring to his backpack as his "survival kit," and claiming that he was not "a big-time dope dealer and that he's just trying to make it in this world." Nor does the record reflect how much time passed between Addison's response to Christopoulos's question and Addison's subsequent statements. There was no testimony that Addison was under the sway of excitement from police intrusion into the apartment or his arrest. Nor were there any findings about timing or Addison's condition. Without support in the record about the timing or Addison's state, we cannot conclude that Addison's incriminating statements were res gestae to the arrest.

But res gestae statements are not the only statements excluded from the recording requirement in article 38.22. Volunteered statements of any kind are not covered by the Fifth Amendment. *See Miranda*, 384 U.S. at 478. In *Stevens v. State*, the Court of Criminal Appeals concluded that a suspect's statement, "Where did you come from? Why couldn't I have gotten away with it?" in response to an arresting officer's instruction to get on the ground, was a voluntary one, made while in custody but not in response to interrogation. 671 S.W.2d at 520. Similarly, our sister court concluded that a suspect's statement that he "killed [his] wife, the mother of [his] kids" and request to be taken in, which he repeated and detailed in the back of a

9

patrol car, were spontaneous. *Ruth v. State*, 167 S.W.3d 560, 570 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

Relatedly, general and routine questions are not interrogation either. *Jones v. State,* 795 S.W.2d 171, 176 (Tex. Crim. App. 1990) (questions by officer conducting a field sobriety test, including asking name and date of birth, were not interrogation); *Ruth*, 167 S.W.3d at 571 (questions attendant to arrest such as name, address, place of employment, date of birth, or physical disabilities do not constitute interrogation under the Fifth Amendment). Christopoulos's post-*Miranda* question about whether there was anything in the apartment he needed to know about was presumably for safety reasons. Thus, Addison's spontaneous statement after he had answered the question in the negative was not the product of interrogation. *Stevens*, 671 S.W.2d at 520.

We overrule Addison's first issue.

**An Indigent Defendant Need Not Repay Court-Appointed Attorney's Fees**

Second, Addison contends that the trial court erred in assessing him $6,750 in attorney's fees and $95 in "reimbursement fees."[3] The State argues that Addison

---

[3]  Although Addison challenges the assessment of both attorney's fees and reimbursement fees, these are separate items in separate statutory provisions. His brief contains no argument about the reimbursement fees. *See* TEX. R. APP. PROC. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to the authorities and the record."). An appellant waives an issue on appeal if he does not brief that issue. *Chaves v. State*, 630 S.W.3d 541, 555 (Tex. App.—Houston [1st Dist.] 2021, no pet.). Accordingly, Addison's challenge to the reimbursement fees is waived.

testified at punishment that he worked as a welder after making bond, so his indigency status had changed since the trial court appointed counsel based on his inability to pay for an attorney. The State does not address the trial court's appointment of appellate counsel to Addison after trial, which requires a finding of indigency.

## A. Standard of Review

We review a trial court's sentencing order under an abuse of discretion standard. *See Jackson v. State,* 680 S.W.2d 809, 814 (Tex. Crim. App. 1984)

## B. Sufficiency of the Evidence on Changed Financial Circumstances

A trial court's determination that a defendant has the financial ability to repay court-appointed attorney's fees must be supported by evidence. *See Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010); *see also* TEX. CODE CRIM. PROC. art. 26.05(g). A "defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs." TEX. CODE CRIM. PROC. art. 26.04(p).

The trial court did not conduct a hearing to inquire about Addison's ability to pay or make any findings about it.[4] The record reflects that the trial court appointed

---

[4] In the future, sentencing courts will be required to inquire on the record whether a defendant has sufficient resources or income to immediately pay all or part of a fine and costs. If the defendant does not have the ability to pay, the court is directed to

11

trial counsel for Addison based on his indigency. Per his testimony during punishment, at the time of the offense, Addison worked for Whataburger doing maintenance. While he was out on bond pending trial, he worked as a welder, building trailers. There was no testimony about how much each job paid or how much, if anything, Addison had in savings. There was no information about who paid the bond or how much was paid. Addison also testified that he had a wife and two children, ages two and four. He was sentenced to 25 years in prison. After the verdict, trial counsel moved to withdraw and requested that the trial court appoint appellate counsel based on Addison's indigency.

We review the record for evidentiary sufficiency of the inquiry into Addison's finances. *Mayer*, 309 S.W.3d at 555. There was none. What we do have is a record bookended by implicit findings of indigency before and after trial. During trial, there was a suggestion that Addison had some income from a job before trial, with no information about how much that job paid or about his financial responsibilities. But this elliptical suggestion based on employment, without more, is not much. Addison was found indigent while having a job before trial. Without more details about why Addison's new job was substantially more remunerative than the last job, it cannot be said the record supports a conclusion that Addison could pay then or in the future,

---

consider whether the costs should be paid later, discharged by performing community service, waived, or satisfied using a combination of these methods. *See* TEX. CODE CRIM. PROC. art. 42.15(a-1) (effective Jan. 1, 2025).

12

especially with a looming 25-year sentence. There is insufficient information to support a conclusion that Addison experienced a "material change in [his] financial circumstances" based on being employed. TEX. CODE CRIM. PROC. art. 26.04(p).

The State has it backward. Rather than conducting a sufficiency analysis, the State urges that no presumption of indigency is created by the appointment of appellate counsel. In the State's view, the presumption of indigency for trial proceedings is "statutorily separated" from post-conviction proceedings. And once a defendant has a job for some time, he is under an onus to prove a prima facie case, when the trial court made no inquiry, that he cannot repay attorney's fees. Such an approach poses a due process problem.

The State's proposal would allow the imposition of attorney's fees where the trial court finds the defendant indigent before and after trial but there was some trial testimony that the defendant complied with pretrial release conditions by being gainfully employed before being incarcerated for 25 years. Such a result would insulate harmful fees practices from review. This is in considerable tension with the future fees and costs scheme that permits waiver of costs, not imposition of costs on indigent defendants without due process. *See* TEX. CODE CRIM. PROC. art. 42.15(a-1) (effective Jan. 1, 2025); *see generally* STATE BAR OF TEXAS STANDING COMMITTEE ON LEGAL SERVICES TO THE POOR IN CRIMINAL MATTERS, *Ability to Pay Guidance for Texas Courts and Practitioners*, adopted Jun. 21, 2023,

https://www.texasbar.com/AM/Template.cfm?Section=Consider_a_State_Bar_Co mmittee&Template=/CM/ContentDisplay.cfm&ContentID=62299. The State has offered no precedential authority for requiring indigent people sentenced to lengthy prison terms to repay attorney's fees without an opportunity to be heard. And we find none.

Because no evidence shows that Addison's financial resources were sufficient to pay all or part of the assessment, the trial court erred in ordering the repayment of attorney's fees. *See Mayer*, 309 S.W.3d at 556–57 (trial court judgment modified to delete unauthorized attorney's fees and affirmed as modified). Accordingly, the judgment of the trial court is modified to delete any obligation to pay attorney's fees.

We sustain Addison's second issue as to repayment of attorney's fees.

**Conclusion**

Accordingly, we affirm the trial court's judgment as modified.

Sarah Beth Landau
Justice

Panel consists of Justices Goodman, Landau, and Hightower.

Publish. TEX. R. APP. P. 47.2(b).