In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00113-CV


______________________________




KENNETH W. MOON, Appellant



V.



THE ESTATE OF L. A. MOON, Appellee




 


On Appeal from the County Court at Law


Harrison County, Texas


Trial Court No. 2006-7269-CCL




 




Before Morriss, C.J., Carter and Cornelius,* JJ.


Opinion by Justice Carter



________________________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment


O P I N I O N



 This is an appeal from a temporary injunction restraining Kenneth Moon from enforcing a
prior judgment and withdrawing funds from a bank account pending resolution of other claims raised
against Kenneth in the probate proceeding. (1) In a previous case appealed to this Court, it was shown
that all of the funds in two bank accounts held in the name of L. A. Moon and Kenneth Moon were
placed there by L. A. Moon. At that time, the trial court had entered a judgment directing the bank
to tender the funds to L. A. Moon's guardian. See Moon, 2007 Tex. App. LEXIS 837, at *2. L. A.
Moon died shortly thereafter, and in the closing of the guardianship proceeding, the same trial court
entered a judgment that the sum of $67,744.92 out of a particular investment fund should be paid
over to Kenneth due to the survivorship terms of the account. That document was signed May 12,
2006. Three months later, an application for temporary injunction was heard by the same court,
which ultimately, on November 7, 2006, issued a temporary injunction restraining Kenneth from
obtaining those funds until claims against him in L. A. Moon's probate proceeding were resolved. 
The court also required the independent executor acting on behalf of the estate of L. A. Moon to
deposit a bond in that amount to secure Kenneth's rights. 

 Kenneth Moon first contends on appeal the trial court erred by refusing to dismiss the case
based on res judicata, collateral estoppel, or limitations because the issues were raised in a prior suit. 
He cites Barr v. Resolution Trust Corp., 837 S.W.2d 627 (Tex. 1992), as authority for that general
proposition, but does not explain how that proposition should be applied to this order. Further, even
extrapolating from the statement of facts set out in the brief, there is nothing that would evoke the
application of that concept. In the previous appeal from the guardianship proceeding, we expressly
stated the trial court disposed of only the matters decided by the jury. Moon, 2007 Tex. App. LEXIS
837, at *5. Kenneth's summary of the argument indicates an attempt to end the entirety of the
probate proceeding--which seeks (among other things) an accounting of funds taken by Kenneth
from L. A. Moon during the guardianship based on res judicata. No basis for such relief has been
shown. The contention of error is overruled.

 Kenneth next contends that the court erred by issuing a temporary injunction because there
was no evidence that a cause of action existed against him, or a probable right to relief, or an
imminent and irreparable injury to the estate of L. A. Moon. 

 An applicant for a temporary injunction seeks extraordinary equitable relief. In re Tex.
Natural Res. Conservation Comm'n, 85 S.W.3d 201, 204 (Tex. 2002). A temporary injunction's
purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. 
Walling v. Metcalfe, 863 S.W.2d 56, 57 (Tex. 1993). To obtain a temporary injunction, the applicant
must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a
probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the
interim. Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002); Walling, 863 S.W.2d at 57. 
An injury is irreparable if the injured party cannot be adequately compensated in damages or if the
damages cannot be measured by any certain pecuniary standard. Butnaru, 84 S.W.3d at 204;
Canteen Corp. v. Republic of Tex. Props., Inc., 773 S.W.2d 398, 401 (Tex. App.--Dallas 1989, no
writ).

 Whether to grant or deny a temporary injunction is within the trial court's sound discretion. 
Walling, 863 S.W.2d at 58. The reviewing court must not substitute its judgment for the trial court's
judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable
discretion. Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 918 (Tex. 1985).

 The difficulty with this case lies in the paucity of the evidence presented at the hearing on
the temporary injunction. The estate called Elizabeth Browning as a witness who, according to
counsel, could testify that Kenneth withdrew funds from an account of L. A. Moon after L. A. had
revoked his power of attorney. However, Browning did nothing more than identify herself before
counsel began debating about a number of matters, and the estate's counsel ultimately allowed her
to leave the stand and attempted to make his proof by questioning Kenneth.

 Kenneth was remarkably unresponsive when answering questions about his financial status
or the source or disposition of funds he had obtained from any source. He testified he did not know
if he had liquid assets that could satisfy a judgment in the amount of $100,000.00 and simply could
not remember even approximate times within the last two to three years when he had been involved
in money transfers each involving over $50,000.00. No specific information was provided. The
court also noted there was nothing to guarantee that the property would still exist at the end of the
litigation. 

 In what was virtually the only clear answer he provided, Kenneth testified in response to his
attorney's question that he owns real estate in Marshall, Harrison County, that had been transferred
to him by the estate of L. A. Moon, valued at over $100,000.00. There were no details.

 The pleadings in this case show that the estate, acting through its independent executor, T. C.
Moon, had brought a number of claims against Kenneth. (2) There is some evidence Kenneth was so
unknowing or recalcitrant about disclosing even the existence of any of his assets, much less specific
information, that it was proper for the trial court to conclude that, in the absence of an injunction
restraining him from collecting these funds, they might disappear, and the estate might forever be
unable to recover any judgment. 

 It appears from the record that the estate intended for that to be shown by Browning's
testimony, but she did not provide that evidence through her testimony, and although there was
considerable discussion and argument by counsel on the nature and strength of some of the claims
against Kenneth, this record contains insufficient evidence to show the existence or the strength of
any such claims. At one point, counsel for the executor stated that signature cards introduced at the
previous trial showed that the funds originated from L. A. Moon's account and that Kenneth used
L. A. Moon's funds to establish an account in his own name. Counsel then argued that was a prima
facie breach of fiduciary duty, to which the court responded, "Well, it would be if that was
presented."

 We recognize that the trial judge was likely relying, in large part, on his memory of other
proceedings involving these parties. This is the same court and judge that heard the guardianship
proceeding and stated that, even though he knew this hearing had to stand on its own, it was hard for
him to forget that he had told all of the parties that, if the estate wanted to make these claims about
these accounts, he would grant an injunction to hold the accounts pending the litigation. It appears
the trial judge intended to rely on facts and documents that he judicially noticed to support the
granting of this injunction. However, those judicially noticed facts as recited into the record by the
trial judge are inadequate to support the elements required for the issuance of a temporary injunction. 

 The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts
present an appropriate case for the trial court's action; rather, it is a question of whether the court
acted without reference to any guiding rules or principles, and the mere fact that a trial court may
decide a matter within its discretionary authority differently than an appellate judge does not
demonstrate such an abuse. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238 (Tex. 1985).

 Under an abuse of discretion standard, the court of appeals cannot overrule the trial court's
decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to
guiding rules or principles. Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Davis
v. Huey, 571 S.W.2d 859, 861-62 (Tex. 1978). Moreover, the court of appeals cannot substitute its
judgment for the trial court's reasonable judgment even if it would have reached a contrary
conclusion. Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992); Buller, 806 S.W.2d at 226.

The trial court abuses its discretion in granting a temporary injunction when the evidence does not
reasonably support the conclusion that the applicant has a probable right of recovery. State v. Sw.
Bell Tel. Co., 526 S.W.2d 526, 529 (Tex. 1975); T.F.W. Mgmt., Inc. v. Westwood Shores Prop.
Owners Ass'n, 162 S.W.3d 564, 567 (Tex. App.--Houston [14th Dist.] 2004, no pet.); Musgrave v.
Brookhaven Lake Prop. Owners Ass'n, 990 S.W.2d 386, 398 (Tex. App.--Texarkana 1999, pet.
denied).

 The evidence presented in this temporary injunction hearing does not reasonably support the
conclusion that any act or omission of Kenneth gave rise to a cause of action by the estate of L. A.
Moon or that the estate had a probable right of recovery against Kenneth--only pleadings and
arguments of counsel alleging such. A party need not prove its underlying case in order to obtain
a temporary injunction, but the party must show that it is probably entitled to the relief sought. To
that effect in this proceeding, the trial court could not be said to have acted within the bounds of its
discretion in issuing the temporary injunction.

 We reverse the order and remand the case to the trial court for further proceedings consistent
with this opinion. 


 Jack Carter

 Justice


Date Submitted: March 9, 2007

Date Decided: April 25, 2007


1. In re Guardianship of Moon, No. 06-05-00128-CV, 2007 Tex. App. LEXIS 837 (Tex.
App.--Texarkana Feb. 6, 2007, no pet. h.).
2. The claims against Kenneth allege a number of bad acts, including transferring funds of
L. A. Moon into his own accounts during a time period while Kenneth had a power of
attorney--which L. A. Moon revoked only two months later, and conversion of bank funds the day
after L. A. Moon had a stroke and was hospitalized, and conversion of rents on a number of rental
houses, apartments, and a washateria.


hether Webb was in custody. The United States Supreme Court has held that the typical traffic
stop does not constitute custody for the purposes of Miranda. Berkemer v. McCarty, 468 U.S. 420
(1984). Whether a person is in "custody" depends on whether, under the circumstances, a reasonable
person would believe his or her freedom of movement was restrained to the degree associated with
a formal arrest. Dowthitt v. State, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996). The subjective
intent of the law enforcement officials is irrelevant unless that intent is somehow communicated or
otherwise manifested to the suspect. Stansbury v. California, 511 U.S. 318, 319 (1994). A
determination of custody should be based entirely on objective circumstances. Dowhitt, 931 S.W.2d
at 254.
            The Texas Court of Criminal Appeals in Dowhitt outlined four general situations which may
constitute custody: 1) when the suspect is physically deprived of his or her freedom of action in any
significant way, 2) when a law enforcement officer tells the suspect he or she cannot leave, 3) when
law enforcement officers create a situation that would lead a reasonable person to believe his or her
freedom of movement has been significantly restricted, and 4) when there is manifestation of
probable cause to arrest and law enforcement officers do not tell the suspect he or she is free to leave. 
Id. at 255. The Texas Court of Criminal Appeals explained that, unlike the first three situations, the
fourth situation does not automatically establish custody, but rather must be considered with other
circumstances to determine whether the combined effect would lead a reasonable person to believe
he or she is under restraint to the degree associated with an arrest. Id.
            Whether an individual was under arrest requires consideration of the degree of the restriction
or restraint to distinguish an arrest from other detentions. Article 15.22 of the Texas Code of
Criminal Procedure provides that "[a] person is arrested when he has been actually placed under
restraint or taken into custody." Tex. Code Crim. Proc. Ann. art. 15.22 (Vernon 1977). The Texas
Court of Criminal Appeals has interpreted the above statute to require consideration of the degree
of the restriction or restraint to distinguish an arrest from other detentions. See Amores v. State, 816
S.W.2d 407, 411–12 (Tex. Crim. App. 1991), modified sub silentio, Medford v. State, 13 S.W.3d
769, 773 (Tex. Crim. App. 2000). The relevant inquiry according to the Texas Court of Criminal
Appeals is whether "appellant had been restricted or restrained in his liberty to such a degree as to
constitute an arrest." Id. at 412. An "arrest" occurs "when a person's liberty of movement is
successfully restricted or restrained, whether this is achieved by an officer's physical force or the
suspect's submission to the officer's authority." Medford, 13 S.W.3d at 773. In Medford, the Texas
Court of Criminal Appeals held an arrest is complete only if "a reasonable person in the suspect's
position would have understood the situation to constitute a restraint on freedom of movement of
the degree which the law associates with formal arrest." Medford, 13 S.W.3d at 773 (citing United
States v. Corral-Franco, 848 F.2d 536, 540 (5th Cir. 1988)). The subjective intent of either the
police officer or the defendant is irrelevant. Vicioso v. State, 54 S.W.3d 104, 110 (Tex. App.—Waco
2001, pet. ref'd), cert. denied, 536 U.S. 915 (2002); see Medford, 13 S.W.3d at 773; cf. California
v. Hodari D., 499 U.S. 621, 628 (1991) (show of authority should be determined objectively). 
Factors which Texas courts have considered include whether the officer actually undertakes an
investigation,


 the accused is handcuffed,


 the accused is detained at gunpoint,


 the number of police
which far outnumber the citizens,


 the use of threatening language,


 the transporting of the accused
to another location,


 the blocking of the accused's vehicle,


 and the use of other physical force.



            Abbott testified that, after he discovered the plastic bag, he asked Webb and the passengers
who it belonged to. Abbott testified one of the suspects responded that "it didn't belong to any of
them." Abbott then had them place their hands on the rear of the pickup truck and advised them he
was placing them all under arrest. At this point, Webb admitted ownership of the narcotics. Abbott
placed Webb under arrest. 
            We must look at the totality of the circumstances and determine whether Webb's freedom of
movement was restrained to a degree associated with a formal arrest at the time of the interrogation. 
Several jurisdictions have held that asking a suspect to identify evidence as his or her property is 
interrogation. United States v. Corbin, 494 F. Supp. 244 (M.D.N.C. 1980) (gun); Lornitis v. State,
394 So. 2d 455 (Fla. Dist. Ct. App. 1981) (luggage with marihuana); People v. Jordan, 413 N.E.2d
195 (Ill. App. Ct. 1980) ("grassy substance"). However, Webb was not in custody at the time Abbott
inquired as to the ownership of the drugs. Although Abbott had probable cause at the time he
inquired as to the ownership of the drugs,


 the circumstances of the detention indicate Webb was not
restricted or restrained in his liberty to such a degree as that a reasonable person would have believed
he or she was under arrest. Abbott did not inform the occupants he had probable cause to arrest all
of them before inquiring into the ownership of the drugs. Further, Abbott did not restrain any of the
occupants in any degree greater than a typical traffic stop detention until he ordered them to place
their hands on the back of the truck and informed them of the arrest. This was after the inquiry as
to the ownership of the drugs. Therefore, at the point of Abbott's inquiry, Webb was not in custody. 
It was not until the officer ordered all three suspects to place their hands on the back of the truck that
they were restrained to such a degree a reasonable person could have concluded he or she was under
arrest. 
            The remaining question is whether any of Abbott's actions after Webb was in custody
resulted in an interrogation. Webb argues Abbott had told the three suspects they were all going to
be arrested unless someone claimed ownership of the drugs. Although the other two occupants were
released when Webb claimed possession, the record, including the partial videotape, does not
indicate such a statement was made. Therefore, the question is whether Abbott knew or should have
known the arrest of the occupants was reasonably likely to evoke an incriminating response from a
suspect. Innis states that the determination of whether police knew or should have known the actions
would evoke an incriminating statement "focuses primarily upon the perceptions of the suspect,
rather than the intent of the police" because the Miranda safeguards apply without regard to the
intent of the police. Innis does note that the intent of the officer is not irrelevant because it may have
bearing on whether "their words or actions were reasonably likely to evoke an incriminating
response." Innis, 446 U.S. at 301 n.7. There is no evidence that Abbott's intent was to elicit an
incriminating statement or that he knew the arrest of all three suspects would be reasonably likely
to result in an incriminating statement. The United States Supreme Court has held that
"'[i]nterrogation,' as conceptualized in the Miranda opinion, must reflect a measure of compulsion
above and beyond that inherent in custody itself." Id. at 300. Thus, Abbott's actions in merely
arresting the three occupants was not the functional equivalent of interrogation.
            As discussed above, Webb's statement does not stem from a custodial interrogation.
Voluntary statements, made while in custody but not in response to interrogation, are admissible. 
Stevens v. State, 671 S.W.2d 517, 520 (Tex. Crim. App. 1984); see Tex. Code Crim. Proc. Ann.
art. 38.22. Because the statements were voluntary and do not stem from custodial interrogation, the
trial court did not err in admitting them over Webb's objection.
Sufficiency of the Evidence
            Webb's second point of error alleges that the evidence is both legally and factually
insufficient. Specifically, Webb argues that, without the statement claiming ownership of the drugs,
there is insufficient affirmative links to the drugs and insufficient corroboration of the accomplice
witness' testimony. 
            In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000); Turner v. State, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991).
            When reviewing a challenge to the factual sufficiency of the evidence to support the
conviction, we are required to determine whether, considering all the evidence in a neutral light, the
jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, No. 539-02,
slip op. at 8, 2004 Lexis 668, at *10–11 (Tex. Crim. App. Apr. 21, 2004). There are two ways in
which we may find the evidence to be factually insufficient. First, if the evidence supporting the
verdict, considered alone, is too weak to support the jury's finding of guilt beyond a reasonable
doubt, then we must find the evidence insufficient. Id. Second, if—when we weigh the evidence
supporting and contravening the conviction—we conclude that the contrary evidence is strong
enough that the State could not have met its burden of proof, we must find the evidence insufficient. 
Id. "Stated another way, evidence supporting guilt can 'outweigh' the contrary proof and still be
factually insufficient under a beyond-a-reasonable doubt standard." Id., No. 539-02, slip op. at 8,
2004 Lexis 668, at *20. If the evidence is factually insufficient, then we must reverse the judgment
and remand for a new trial. Id., No. 539-02, slip op. at 5, 2004 Lexis 668, at *11.
            Webb argues the accomplice witness testimony is uncorroborated. Charles Sleeman, one of
the passengers, testified Webb handed the container to Carol Shipp, the other passenger, before
stopping the truck. Shipp immediately passed the container to Sleeman, who threw it on the other
side of the pickup truck. Article 38.14 provides that "[a] conviction cannot be had upon the
testimony of an accomplice unless corroborated by other evidence tending to connect the defendant
with the offense committed; and the corroboration is not sufficient if it merely shows the commission
of the offense." Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 1979). "The test for weighing the
sufficiency of corroborative evidence is to eliminate from consideration the testimony of the
accomplice witness and then examine the testimony of other witnesses to ascertain if there is
evidence which tends to connect the accused with the commission of the offense." Hernandez v.
State, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997) (citing Reed v. State, 744 S.W.2d 112, 125 (Tex.
Crim. App. 1988)); see Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). The
nonaccomplice evidence does not need to prove all the elements of the alleged offense. Hernandez,
939 S.W.2d at 176; Underwood v. State, 967 S.W.2d 925, 928 (Tex. App.—Beaumont 1998, pet.
ref'd). 
            The accomplice witness rule only requires that there is some nonaccomplice evidence which
"tends to connect" the accused to the commission of the offense alleged in the indictment.
Hernandez, 939 S.W.2d at 176. The mere presence of a defendant at the scene of the crime, though,
is insufficient to corroborate accomplice witness testimony. Cox v. State, 830 S.W.2d 609, 611 (Tex.
Crim. App. 1992); Beathard v. State, 767 S.W.2d 423, 428 (Tex. Crim. App. 1989); Howard v.
State, 972 S.W.2d 121, 127 (Tex. App.—Austin 1998, no pet.). Webb admitted ownership of the
narcotics. Abbott testified Webb failed to pull over promptly and appeared nervous. Matters
concerning an evaluation of credibility and demeanor are the sole province of the jury. Cain v. State,
958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997). There is sufficient evidence that "tends to
connect" Webb to the offense and therefore corroborate the testimony of Sleeman. 
            Because the contraband was not found on the accused's person or in the exclusive possession
of the accused, the evidence must affirmatively link the accused to the contraband. Jones v. State,
963 S.W.2d 826, 830 (Tex. App.—Texarkana 1998, pet. ref'd). This Court has held that factors
which should be considered when evaluating whether an affirmative link exists are:
1) the defendant's presence when the search was executed; 2) whether the contraband
was in plain view; 3) the defendant's proximity to and the accessibility of the
contraband; 4) whether the defendant was under the influence of a controlled
substance when arrested; 5) whether the defendant possessed other contraband when
arrested; 6) whether the defendant made incriminating statements when arrested;
7) whether the defendant attempted to flee; 8) whether the defendant made furtive
gestures; 9) whether there was an odor of the contraband; 10) whether other
contraband or drug paraphernalia was present; 11) whether defendant owned or had
the right to possess the place where the drugs were found; and 12) whether the place
the drugs were found was enclosed. 
Id.; see Chavez v. State, 769 S.W.2d 284, 288 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd). The
affirmative link to the contraband does not need to exclude every other reasonable hypothesis except
the defendant's guilt. Brown v. State, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995). "The number
of factors present is not as important as the degree to which the factors tend to affirmatively link the
accused to the contraband." Williams v. State, 906 S.W.2d 58, 65 (Tex. App.—Tyler 1995, pet.
ref'd). 
            The evidence did affirmatively link Webb to the contraband. Webb was present when the
search was conducted and owned the vehicle in which the drugs were found. Further, Webb
admitted ownership of the drugs. Abbott testified Webb failed to pull over promptly. Sleeman
testified Webb handed the container to Shipp before stopping the truck. Shipp immediately passed
the container to Sleeman, who threw it on the other side of the truck. We believe that a rational juror
could have found that sufficient affirmative links existed to conclude Webb possessed the controlled
substance beyond a reasonable doubt. Further, the verdict is not so contrary to the overwhelming
weight of the evidence as to be clearly wrong, or so weak as to be clearly wrong or manifestly unjust. 
            Because the accomplice witness testimony was sufficiently corroborated and there are
sufficient affirmative links, the evidence was both factually and legally sufficient. We overrule
Webb's second point of error.
Ineffective Assistance of Counsel
            In his third point of error, Webb argues he received ineffective assistance of counsel because
his attorney failed to challenge the admissibility of the evidence. Webb asserts that his consent to
search the vehicle was limited to "open containers." Because the drugs were found in a closed
container and not in plain view, Webb contends the evidence was illegally obtained and should have
been suppressed. Webb's argument fails because he has not overcome the presumption that his
counsel's performance was adequate.
            After pulling Webb's vehicle over, Abbott observed that Webb appeared nervous, requested
that Webb exit the vehicle, and requested consent to search the vehicle. The videotape, which was
admitted into evidence, records their subsequent conversation as follows:
[OFFICER:]Do you mind if I check for open containers or anything like
that, is it okay?
                        [WEBB:]There's nothing in the truck.
[OFFICER:]That's what I'm after, it'll just take a second if there ain't
nothing in the truck.
[WEBB:]There might be empty beer cans in the back.
[OFFICER:]Well, that's okay. If there's empty beer cans in the back. Just
take a second --
[WEBB:] All right.
[OFFICER:]Is that all right?
                        [WEBB:]        I guess. 
            While searching the vehicle, Abbott saw a silver, metallic container laying on the front seat
of the vehicle in "plain view." Abbott testified the container was "very unique in design and style"
and reminded him of a World War I or World War II match holder. Abbott removed the container
from the vehicle and attempted to open it. After initially having difficulty opening the container,
Abbott requested one of the passengers to open it, who refused. Eventually, Abbott opened the
container and found a plastic bag containing a trace of a white, powdery substance. 
            When the State offered the container into evidence, defense counsel stated: "We have no
objection." Defense counsel also stated he had "no objection" to the bag containing traces of
methamphetamine. Defense counsel did object to the introduction of the drug analysis report by the
Texas Department of Public Safety Crime Laboratory alleging the report was hearsay. 
            Both the Sixth Amendment to the United States Constitution and the Texas Constitution
confer a right to effective representation by counsel. U.S. Const. amend. VI; Tex. Const. art. I,
§ 10. If counsel's performance is ineffective, the conviction cannot stand. The Texas Court of
Criminal Appeals has held that the Texas Constitution does not impose a higher standard than the
Sixth Amendment. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); Hernandez v.
State, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986). The Sixth Amendment standard, established
by Strickland, requires a defendant alleging ineffective assistance of counsel to show that his or her
counsel's performance at trial was deficient and that counsel's deficient performance prejudiced his
or her defense. See Strickland v. Washington, 466 U.S. 668 (1984); see also Bone v. State, 77
S.W.3d 828, 833 (Tex. Crim. App. 2002). 
            To satisfy the deficiency prong of the test, Webb must prove, by a preponderance of the
evidence, that his counsel's representation fell below the objective standard of professional norms. 
Bone, 77 S.W.3d at 833. There is a strong presumption that counsel's performance was adequate. 
Id. The reason for this assumption is that counsel at trial is better positioned to judge matters of
strategy than an appellate court reviewing a cold record. An appellate court should not "conclude
the challenged conduct constituted deficient performance unless the conduct was so outrageous that
no competent attorney would have engaged in it." Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim.
App. 2001). 
            There is no indication in the record as to why Webb's counsel chose not to challenge the
admissibility of the evidence. Ineffective assistance of counsel claims "must be firmly founded in
the record." Thompson v. State, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999). Direct appeal is
a poor vehicle to bring an ineffective assistance of counsel claim. Direct appeals often present a
limited record for review of the typical issues raised in an ineffective assistance point.


 One way
to get evidence of counsel's trial strategy or other matters in the direct appeal record is through a
motion for new trial. Another way to develop a proper record is through a hearing in a habeas corpus
collateral attack. See generally Tex. Code Crim. Proc. Ann. arts. 11.01–11.65 (Vernon 1977 &
Supp. 2004). 
            Webb's ineffective assistance of counsel claim fails because it concerns a matter of strategy. 
An ineffective assistance of counsel claim cannot be based on a difference of opinion concerning
strategy. "[T]he defendant must prove, by a preponderance of the evidence, that there is . . . no
plausible professional reason for a specific act or omission." Bone, 77 S.W.3d at 836. Webb's
attorney at trial could have decided that the better strategy was to argue that the drugs could have
belonged to one of the passengers of the vehicle rather than to Webb. The strategic decision not to
challenge the evidence allowed Webb's attorney to focus his efforts on the argument that the drugs
belonged to one of the passengers. Further, Webb's attorney could have decided that the phrase
"anything like that" prevented the scope of consent from being limited to "open containers." Abbott
had previously engaged in a lengthy discussion of history of drug use by one of Webb's passengers. 
Webb's attorney could have decided that the scope of the consent was not limited to "open
containers" and decided not to pursue the suppression of the drugs. This Court should not consider
the wisdom of such a strategy, since ineffective assistance of counsel claims cannot be "built on
retrospective speculation." Bone, 77 S.W.3d at 835. "If counsel's reasons for his conduct do not
appear in the record and there is at least the possibility that the conduct could have been legitimate
trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim
on direct appeal." Ortiz v. State, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002). Since there is a
plausible professional reason for not challenging the admissibility of the evidence, Webb has failed
to meet his burden of showing that his counsel's performance was deficient. Therefore, we overrule
Webb's third point of error.
            For the reasons stated, we affirm the judgment of the trial court.
 


                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          March 31, 2004
Date Decided:             April 29, 2004

Do Not Publish