Affirmed and Memorandum Opinion filed April 22, 2010



 



 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00075-CR



 

Michael Garcia, Appellant

V.

The State of Texas, Appellee

 



On Appeal from the 54th District
Court

McLennan County, Texas

Trial Court Cause No. 2008-590-C2



 

MEMORANDUM  OPINION

 

 Appellant Michael Garcia appeals his second degree
felony conviction for failure to comply with sex offender registration
requirements[1]
on grounds that: (1) the State made an improper jury argument during the
guilt-innocence phase of the trial; (2) the trial court improperly included an
anti-sympathy instruction in the jury charge on punishment; and (3) the trial
court erred by admitting evidence of extraneous bad acts during the
guilt-innocence phase of the trial.  We affirm.

Background

Appellant was required to register as a sex offender
because of a 1990 conviction for indecency with a child.  Appellant registered for
the first time with the Waco Police Department on July 10, 2006.  He registered
1219 N. 16th Street in Waco as his address, and he stated that he was
unemployed.  At the time of registration, he received an information package;
the sex offender administrative service coordinator, Linda Morcom, went over
the information provided in the package with appellant.  The information in the
package provides that a sex offender must, among other things, update any
change of address and change in employment status.  Morcom also tells all
registering sex offenders that their address for purposes of registration is
considered the place “where you lay down your head at night” so “that everybody
understands it.”

On October 24, 2006, appellant went to the Waco
Police Department for a required update.  Appellant also went to his annual
registration on December 22, 2006.  He went to another registration update on
February 27, 2007.  Each time he visited with the coordinator, he indicated
that there was no change in address or employment status.

In September 2006, appellant met Brenda Morales, who
lived in Bellmead, Texas with her five children.  Between October and December
2006, appellant started sleeping over at Morales’s house in Bellmead, and also
started bringing his things over to her house.  In January 2007, appellant permanently
moved in with Morales and slept in her bedroom until she asked appellant to
move out in June 2007.  During this time, appellant received two letters from
his brother at Morales’s address.  Morales also drove appellant to his place of
employment; he was employed as a painter by Ralph Melendez Painting Company.  Appellant
never told Morales that he was a convicted sex offender.  Appellant never
registered with the Bellmead Police Department after moving in with Morales.

In June 2007, Waco Police Department Detective
Michael Alston was looking for appellant in connection with an alleged sexual
assault; he checked the most recently registered address that was in
appellant’s sex offender registration file.  When Alston went to 1219 N. 16th
Street in Waco — the address provided for on appellant’s registration — Alston
could not locate appellant.  Alston was told by appellant’s relative, Frank
Munoz, that Morales could provide information regarding appellant’s whereabouts. 
Alston went to Morales’s place of employment on June 5, 2007.  Alston informed
Morales that he was looking for appellant because he was accused of sexual
assault; Alston also informed Morales that appellant was a registered sex
offender.  Morales gave Alston the address of appellant’s employer — the Ralph
Melendez Painting Company.   

The Waco Police Department did not have an employer
on file, and appellant’s registration documents showed appellant was
unemployed.  When Alston went to Ralph Melendez’s paint shop, Alston was given
an address at which appellant was working on a paint job.  Alston found
appellant at the job site.  Based on his investigation, Alston sought an arrest
warrant for appellant for failing to update his registration with respect to a
change of address and a change in his employment status.

Appellant was indicted for failing to comply with sex
offender registration requirements on three counts.  One count of the
indictment alleged that on or about June 15, 2007, appellant intentionally,
knowingly and recklessly failed to report in person to the Waco Police Department
and provide his anticipated move date and new address as required by article
62.055 of the Texas Code of Criminal Procedure not later than the seventh day
before his intended change of address.[2]


Count two of the indictment alleged that on or about
June 15, 2007, appellant intentionally, knowingly or recklessly failed to
report in person to the Bellmead Police Department, and failed to provide proof
of identity and proof of residence not later than the seventh day after
changing the address as required by article 62.055 of the Texas Code of
Criminal Procedure.[3] 


Count three of the indictment alleged that appellant
spent more than 48 consecutive hours in Bellmead on at least three occasions,
and that appellant intentionally, knowingly and recklessly failed to provide
Bellmead Police Department with (1) the address of any location in Bellmead at
which appellant was lodged during January 2007; and (2) a statement as to
whether appellant intended to return to Bellmead during February 2007, as
required by section 62.059 of the Texas Code of Criminal Procedure.[4]

A jury found appellant guilty on counts one and two,
and found appellant not guilty on count three.  The jury assessed appellant’s
punishment at 20 years’ confinement and a $5,000 fine in counts one and two.
The trial court ordered the sentences to run concurrently.  This appeal
followed.[5]


Analysis

I.                  
Improper Jury Argument

            In his first
issue, appellant argues that the State made an improper jury argument during
the guilt-innocence phase of the trial, and that the trial court erred by
overruling appellant’s objection to the improper argument.  Appellant contends
that the State’s argument was improper because the State suggested “that even
if a juror had a reasonable doubt on all three counts, the juror should
consider that voting his or her conscience and acquitting Appellant would send
a message to violate the registration laws in the future.”  Appellant points to
the following exchange:

THE STATE: Think about what not guilty means.  Okay.  If
you find him guilty on one thing, we move to the punishment phase.  If you find
him not guilty on three, you know, all three of them, ask yourselves what that
means.  Go ahead and do it again.  It’s not serious.  Don’t take it seriously,
you know.  It was just a mistake.

DEFENSE COUNSEL: Judge, I’d like to object.  She’s asking
the jury to disregard their obligation to follow the law, or whatever, and
consider what it means if they find him not guilty.

THE TRIAL COURT: Move along, please.

THE STATE: I ask you to think about what that kind of
verdict would tell this Defendant.

The State argues that appellant failed to preserve
his complaint because he did not obtain an adverse ruling from the trial court
on his objection; the State argues that the trial court’s statement “[m]ove
along, please” is not an adverse ruling.  The Court of Criminal Appeals has
held that “move along” is not an adverse ruling that will preserve error.  See,
e.g., Stevens v. State, 671 S.W.2d 517, 521 (Tex. Crim. App. 1984) (en
banc).  Therefore, the State correctly asserts that appellant waived his
complaint because he failed to secure an adverse ruling.  See id. 
However, even if appellant had preserved his complaint, we conclude that the
State’s closing argument in this case was not improper.  The State’s argument
constituted a proper plea for law enforcement.  

Proper jury argument generally falls within one of
four general areas: (1) summation of the evidence; (2) reasonable deduction
from the evidence; (3) answer to argument of opposing counsel; and (4) plea for
law enforcement.  Brown v. State, 270 S.W.3d 564, 570 (Tex. Crim. App.
2008).  Even aggressive arguments are permissible as long as the arguments fall
within one of the four areas of proper jury argument.  See Berry v. State,
233 S.W.3d 847, 860 (Tex. Crim. App. 2007).

The following excerpts from the State’s closing
argument in rebuttal put the isolated statements appellant complains of in the
proper context:

THE STATE: Ladies and gentlemen, I want to remind you of
something that the defense attorney told you in opening.  When does someone
intend to move?  This defendant never changed his mailing address.  And I ask
you, what is the purpose of the law here.  When you look up something on a
registry, are you looking up to find out what a sex offender’s mailing address
is?  Does anybody care about that?  Are we sending them cards?  No.  We want to
know where to find them.  Now, if he lived there for 6   months, 180 days, 7
days a week, that’s where he was living.  That’s where he was living.  That’s
where we could find him.  Those are the people in Bellmead that should have
been able to know, don’t let my kids play in front of that yard, don’t let my
teenage daughter go down there or my teenage son go down there.  Those are the
people that need that information, and they don’t have it.  It is just plain
and simple.  Okay.  Where he was getting his mail doesn’t mean anything. 
Okay.  And I ask you to take this back there and look at it.  You know, this is
— this is not confusing stuff.  Where you live and you change your address is
not confusing.  When you move to another residence, whether it’s within the
city of Waco or outside, you must tell us seven days before you intend to go —
move.  What did he move?  His stuff, his TV, his bed, his dresser, his rug, his
clothes.  Brenda told you he moved all his clothes over there.  

*                                  *                                  *

Ladies and gentlemen, I’m not saying he lived there [at
Morales’s house] for 20 years.  I’m saying he lived there for six months
period.  In that six months, he was supposed to tell us he was there.  It’s
just very simple.  

So — and [defense counsel] Mr. Obenoskey said, well, he
didn’t shut off the bills or he didn’t — rent the house to someone else.  It
wasn’t his house that he was at . . . at 1219 North 16th Street.  Other people
were living there.  So what would he be shutting off?  Nothing was ever in his
name at that house.  Okay.  He was just staying there with other people none of
whom, by the way, you heard from.  Okay.  I went through everything with the
dad.  Who were the people who lived there?

*                                  *                                  *

Okay. No respect for the law.  Also, he’s confused about
the change of address.  Is he confused about what a job means too?  Are you
supposed to believe that?  He came into Waco P.D. four times.  Every time they
say, do you need to update your employment; no, I don’t have a job.  What’s
clear in this case?  Brenda told you he had a job.  His boss told you he had a
job, and his dad told you he had a job.  Okay.  This is simple stuff, ladies
and gentlemen.  Where are you working?  Where do you live?  Okay.  So what’s
really going on here?  He didn’t want to tell Brenda he was a sex offender. 
Okay.  And if he had to bring her in to fill out the roommate information, she
would have known.  Okay.  If he told Waco or told Bellmead what his mailing
address was and changed it to hers, all of the you-need-to-come-in-and-update-your-registration
mail would have been coming to her house and she would have known he was a sex
offender.  . . . 

And so, he didn’t want to tell her that and so he didn’t
update his registration.  And by not doing that, he circumvented the entire law
that we have in place.  . . .  And again, where did he get the mail he cared
about?  Where did his brother mail letters to him?  Her house.  Why?  . . .  
Because that’s where he is going to get them the fastest because that’s where
he’s at.  . . .  The Defendant told the brother where to mail him mail.  Okay. 
Where is he getting the mail he cares about?  His home.  His home was with her.

There’s another thing I wanted to point out.  He says in
the letter that you have to take back with you, I want all of my stuff back. 
All my big stuff, my bed, the lawn chairs.  I mean, he’s talking about what
happens when a relationship ends and you’re breaking up and you want your stuff
back because he lived there.  Because he moved his stuff in just like the paper
says.  He moved there.

*                                  *                                  *

And when you’re in a serious relationship, you move in
together.  It’s just as simple as that.  And he didn’t want her to know so he
didn’t change his mailing address.  He didn’t tell anybody where to find him because
he didn’t want her to find out he’s a sex offender.  But in doing that, he kept
us all from knowing where he lives.  And that’s the purpose of this whole
thing.

This isn’t a joke, ladies and gentlemen, and I ask you to
think about — I know it seems really silly.  It’s just — I don’t think it seems
silly.  But he’s just moved from Waco to Bellmead, it’s not that far. 
Detective Alston found him in about a week.  You know, he went to his address. 
He had to hunt him down.  Well, now you know.  Waco P.D. doesn’t have the time
to find where 260 registered sex offenders are in our city.  . . .   And when
he tried to find him, he was not where he was supposed to be.  Plain and
simple.  He had to go to his work.  He had to go to his girlfriend’s work to
find out where to find him.  And he ended up finding him on the job that he
didn’t tell anyone about.  

Think about what not guilty means.  Okay.  If you find him
guilty on one thing, we move to the punishment phase.  If you find him not
guilty on three, you know, all three of them, ask yourselves what that means. 
Go ahead and do it again.  It’s not serious.  Don’t take it seriously, you
know.  It was just a mistake.

DEFENSE COUNSEL: Judge, I’d like to object.  She’s asking
the jury to disregard their obligation to follow the law, or whatever, and
consider what it means if they find him not guilty.

THE TRIAL COURT: Move along, please.

THE STATE: I ask you to think about what that kind of
verdict would tell this Defendant.  He has not followed the rules.  And if you
think it’s important for him to follow the rules, you need to hold him
accountable for what he has chosen to do.  And he has chosen to conceal
information that we need to get — that he needs to be giving us.  Why do we
have this law?  So the public, so this girl, . . . [A.A.], in this pen pack
that he has been convicted of fondling should also be able to know where he’s
at.  And she was not able to know that for the six months he was living in
Bellmead.  Who knows — all of the people out there and her had no idea he was
there and he kept that information from us and he has been told over and over
again four times, we know where you’re at, we need to know where you’re
working.  This is not a joke, and don’t let him get away with this.

Reviewing the State’s argument in its entirety, the
record establishes that the State explained the law, the purpose of the law,
and the importance of the law to the jury.  The State also summarized evidence
establishing that appellant violated the registration requirements imposed on
him by the law as a convicted sex offender.  The State asked the jury to take
the registration requirements imposed by law seriously and to not let appellant
“get away with” failing to timely register as required by law.  Accordingly, based
upon our consideration of the State’s closing argument as a whole, we conclude
that the State’s argument was within the permissible limits of a plea for law
enforcement.  We overrule appellant’s first issue.

II.        Sympathy Instruction

In his second issue, appellant contends the trial
court improperly included the following anti-sympathy instruction in the jury
charge on punishment: “Do not let personal bias, prejudice, sympathy or
resentment on your part, or any such personal emotion on your part, enter into
your deliberations or affect your verdict in this case.”

When reviewing allegations of charge error, we must
first determine whether error actually exists in the charge.  Ngo v. State,
175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc).  If error is found, we
must determine whether it caused sufficient harm to require reversal.  Id.
 The degree of harm necessary for reversal depends on whether the appellant
preserved the error by objection.  Id.  Jury charge error requires
reversal when the appellant has properly objected to the charge and we find
“some harm” to his rights.  Id. (citing Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1984) (en banc), superseded on other
grounds by Rodriguez v. State, 758 S.W.2d 787)).  When the appellant
fails to object, as in this case, we will not reverse for jury charge error
unless the record shows “egregious harm.”  Id. at 743-44.  

Appellant states that “[u]nder article 36.14 of the
Code of Criminal Procedure, the judge is required to charge the jury ‘setting
forth the law applicable to the case.’”  Appellant also states that “under the
Texas punishment scheme, there is individualized sentencing, i.e.,
evidence that would yield a sentence tailored to the specifics of the case, and
a wide variety of facts may be introduced during the punishment phase,
including but not limited to evidence about the background of the accused.” 
Appellant concludes that “to instruct the jury not to consider sympathy at
all would violate article 36.14 and article 37.07, § 3(a).” (original
emphasis). 

             The Court or
Criminal Appeals has held that an anti-sympathy instruction is authorized by article
36.14.  McFarland v. State, 928 S.W.2d 482, 522-23 (Tex. Crim. App.
1996) (en banc), overruled on other grounds by Mosley v. State, 983
S.W.2d 249 (Tex. Crim. App. 1998) (en banc).  The court stated that as a matter
of state law any emotional appeal has “no relevance to the jury’s assessment of
‘the circumstances of the offense, the defendant’s character and background,
and the personal moral culpability of the defendant.’”  Id. at 522
(quoting Tex. Code Crim. Proc. Ann. art. 37.071, §2(e)(Vernon 2006)).  Therefore,
the court held that “the irrelevance of ‘mere sentiment, conjecture, sympathy,
passion, prejudice, public opinion or public feeling’ to the jury’s assessment .
. . is a component of ‘the law applicable to the case’ for purposes of
instructing the jury under Article 36.14.”  Id. at 523.  The analysis in
McFarland applies with equal force to article 37.07.  Accordingly, the
trial court’s anti-sympathy instruction did not violate articles 36.14 or
article 37.07, and the trial court did not err by giving this instruction. 

            However, even if we
were to assume the trial court erred by giving the jury an anti-sympathy
instruction, the record does not support a finding that appellant suffered
egregious harm.  

Jury charge error is egregiously harmful if it
affects the very basis of the case, deprives the defendant of a valuable right,
or vitally affects a defensive theory.  Stuhler v. State, 218 S.W.3d
706, 719 (Tex. Crim. App. 2007).  In examining the record to determine whether
jury charge error is egregious, we consider the entirety of the jury charge
itself, the evidence, including the contested issues and weight of the
probative evidence, the arguments of counsel, and any other relevant
information revealed by the record of the trial as a whole.  Id.  Egregious
harm is a difficult standard to meet and must be determined on a case-by-case
basis.  Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (en
banc).    

The evidence also established that appellant had
convictions for numerous other crimes.  Appellant was convicted of resisting
arrest and sniffing fumes in 1989.  Appellant was convicted of indecency with a
child in 1990.  Although his sentence was probated for ten years, probation was
revoked because he was kicked out of a boot camp program.  Appellant’s
probation officer testified that he was kicked out after he (1) had behavioral
problems with staff and other cadets; and (2) threatened to hurt another cadet
and then exposed his penis to the cadet.  An administrative hearing was held at
the boot camp regarding appellant’s behavior, and appellant pled guilty to
“major disruptive behavior, threatening another cadet, and falsifying
information to staff.”  

            In 1998,
appellant was convicted of aggravated assault.  Appellant admitted shooting the
complainant in the face after the complainant gave a cigarette to a girl who
was at a club with appellant.  He served eight years in prison for this
conviction.  Appellant was convicted of assault on April 3, 2008, for beating
Brenda McGrew.  Although Alston originally investigated appellant for
committing an aggravated sexual assault on McGrew in June 2007, appellant was
convicted only of assault because McGrew had “trouble remembering what happened
because of her — the beatings she received.”  The jury was shown numerous
photos depicting McGrew after the assault and could see how severely McGrew had
been beaten.  Appellant admitted assaulting McGrew because, he claimed, she
tried to steal his money.

            The jury also heard
evidence of appellant’s gang membership.  McLennan County jail book-in
technician Crissy Forrester testified that, during his interview with
Forrester, appellant stated he was a member of the Texas Syndicate gang. 
Alston testified that the Texas Syndicate “is an extremely violent gang.” 
Finally, the jury heard from appellant.  Appellant showed no remorse for his
past or present crimes.  He also continued denying that he moved in with Morales
and testified that he did not inform the Bellmead police department of his stay
with Morales because he “never stayed there . . . [and] did not live there.” 
Appellant testified, “All I did was go over there and spend the night there,
you know.  That’s not against the law.  It didn’t say that in my rules, that I
couldn’t have a girlfriend, I couldn’t stay with her now and then.”  

With regard to his failure to update his employment
status, appellant testified that he did not tell the Waco police department he
was employed by Ralph Melendez because he did not believe his job was a “steady
job.”  Appellant also stated he did not inform the police “[b]ecause I didn’t
feel that it was a — major deal where, you know, I would be punished severely
for trying to get a job.”

Although the State once remarked “Don’t feel sorry
for him.  This isn’t the sympathy phase[,]” in light of the evidence described
above, the record does not support a conclusion that appellant suffered
egregious harm from the challenged jury instruction. We overrule appellant’s
second issue.  

III.      Extraneous
Bad Acts

In his third issue, appellant argues that the trial
court erred by admitting evidence of two extraneous bad acts during the guilt-innocence
phase of the trial “which cumulatively harmed the outcome of the trial.”  The two
bad acts appellant complains of are (1) his failure to report his employment;
and (2) an accusation of sexual assault.  We will address each complaint in
turn. 

1.         Failure to
Report Employment

Appellant contends that the trial court erroneously
admitted evidence regarding his employment with the Ralph Melendez Painting
Company when previously admitted evidence had established that appellant did
not update his sex offender registration to indicate that he was no longer
unemployed; appellant admits that failing to report employment constitutes a
violation of the sex offender reporting requirements.  See Tex. Code
Crim. Proc. Ann. art. 62.05(c)(6), (7), (g) (Vernon Supp. 2009).  Relying on
Rule 404(b), appellant objected at trial to the admission of evidence relating
to his employment with the Ralph Melendez Painting Company.  The trial court
allowed appellant’s employer Ralph Melendez to testify that appellant was
employed by him and gave the jury a limiting instruction regarding the
testimony. 

We review a trial court’s ruling under the Texas Rules
of Evidence for abuse of discretion.  Billodeau v. State, 277 S.W.3d 34,
39 (Tex. Crim. App. 2009).  We consider the ruling in light of what was before
the trial court at the time the ruling was made and uphold the trial court’s
judgment if it lies within the zone of reasonable disagreement.  Id.  If
the trial court’s evidentiary ruling is correct on any theory of law applicable
to that ruling, it will not be disturbed even if the trial court gave the wrong
reason for its correct ruling.  De La Paz v. State, 279 S.W.3d 336, 344
(Tex. Crim. App. 2009).  

Under Texas Rule of Evidence 404(b), evidence “of
other crimes, wrongs or acts is not admissible to prove the character of a
person in order to show action in conformity therewith.”  Tex. R. Evid. 404(b);
De La Paz, 279 S.W.3d at 342-43.  But it may “be admissible for other
purposes, such as proof of motive, opportunity, intent, preparation, plan,
knowledge, identity, or absence of mistake or accident.”   Tex. R. Evid. 404(b);
De La Paz, 279 S.W.3d at 343.  

Evidence of extraneous bad acts is admissible under
Rule 404(b) if the evidence is relevant[6]
to a fact of consequence apart from character conformity in “that it tends to
establish some elemental fact, such as identity or intent; that it tends to
establish some evidentiary fact, such as motive, opportunity or preparation,
leading inferentially to an elemental fact; or that it rebuts a defensive
theory by showing, e.g., absence of mistake or accident.”  Powell v.
State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001) (quoting Montgomery v.
State, 810 S.W.2d 372, 387-88 (Tex. Crim. App. 1990) (en banc)); see
also Tex. R. Evid. 404(b); De La Paz, 279 S.W.3d at 343; Casey v.
State, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).  

Appellant contends that evidence of his failure to
report to the Waco Police Department that he was employed was not relevant in
determining “whether he intentionally, knowingly, or recklessly did not report
moving.”  He contends this evidence does not “tend to make the existence of the
pertinent material fact — mens rea regarding not reporting moving . . .
more or less probable.”  Appellant further argues that failing to report to
“the police department he had a job does not make it more probable that his not
reporting moving was not a mistake or an accident.” [7] 
We disagree. 

In his opening statement, appellant told the jury
that he “never intended to change [his] address.”  During cross-examination of
sex offender administrative service coordinator Linda Morcom, appellant challenged
the specificity and clarity of the registration requirements provided in the
information packet.  Appellant established that the terms “residence” and
“move” were not defined in the information package and implied the terms were
subject to conflicting interpretations.  Appellant’s argument and strategy at
trial raised the issue of whether appellant had the requisite intent to violate
the registration requirement, and it raised the defense of mistake or accident.

Appellant’s intent, and correspondingly the absence
of mistake or accident, was a fact of consequence in this case.  See
Sattiewhite v. State, 786 S.W.2d 271, 284 (Tex. Crim. App. 1989) (“evidence
which reflects on the issue of the intent of the accused is admissible”).  Evidence
of appellant’s employment and his failure to report his employment status was
relevant because it tended to establish an elemental fact — the intent to not
report his move and change of address to the Bellmead Police Department — and it
tended to rebut a defensive theory by showing an absence of mistake or
accident.  

The fact that appellant did not inform the Waco
Police Department of his employment was some evidence establishing appellant’s
intent to violate the registration requirements by not informing the police
department he had moved to Bellmead.  Evidence by itself need not prove or
disprove a particular fact of consequence; however, it is sufficient if the
evidence provides a small nudge towards proving or disproving a fact of consequence.
 See Stewart v. State, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004).       

In this case, the extraneous evidence was relevant to
proving a fact of consequence beyond mere action in conformity with bad
character.  See Tex. R. Evid. 404(b).  Accordingly, we reject
appellant’s contention that failing to report to “the police department he had
a job does not make it more probable that his not reporting moving was not a
mistake or an accident;” and that the evidence does not “tend to make the
existence of the pertinent material fact — mens rea regarding not
reporting moving . . .  more or less probable.” 

The trial court did not err in admitting evidence
regarding his employment when previously elicited evidence had established that
appellant did not update his sex offender registration to indicate that he was
no longer unemployed.  

2.         Accusation of Sexual Assault

Appellant contends that the trial court erroneously
allowed Morales to testify that appellant had been accused of sexually
assaulting another woman.  Appellant claims that the admission of this evidence
violated Texas Rules of Evidence 404(b) and 403.  

After the State had called Morales as a witness in
this case, appellant called Morales to testify again the next day.  During
Morales’s direct-examination, defense counsel elicited the following testimony:

DEFENSE COUNSEL: After . . . [appellant] was arrested in
this matter, you continued to correspond with him, correct? 

MORALES: Yes. 

DEFENSE COUNSEL: And the truth is that you believed that he
cheated on you, correct?

MORALES: Yes.

DEFENSE COUNSEL: Okay.  . . .  and in one of those letters
that you wrote to him, or whatever, you told him that he would feel the pain
for cheating on you; is that correct?

MORALES: By losing me, yes.

THE STATE: Judge, at this point I’m going to object to
hearsay of the letter.  If it’s not being used to impeach her, then I’m going
to object to any reading of the letter unless there’s a prior inconsistent
statement in that letter.

DEFENSE COUNSEL: That’s what I’m trying to clarify.

THE COURT: Nothing has been offered at this point in time,
so I’m not going to rule at all.

DEFENSE COUNSEL: Let me clarify that.  You believe that . .
. [appellant] cheated on him?

MORALES: Well —

DEFENSE COUNSEL: Or you.  

MORALES: I had already kicked him out.

DEFENSE COUNSEL: Okay.  

MORALES: When I asked him if it was true about what
Detective Alston told me, that he assaulted someone, he told me he denied it. 
But I didn’t believe it.

DEFENSE COUNSEL: Were you mad at him for that?

MORALES: I was upset.  I was more upset because I didn’t
know he was a sex offender and he was living in my house with my teenage
daughters.

DEFENSE COUNSEL: And were you mad at him about that?

*                                  *                                  *

DEFENSE COUNSEL: In your letter to him you said that he
would feel the pain; is that correct?

MORALES: I mean, I said he would feel the pain because he
lost me.  I mean, even before.  Not because he was with that girl.

On cross-examination, Morales
testified as follows:

THE STATE: Ms. Morales, . . . [Defense Counsel] asked you
if you kicked him out because — and you said something about you asked him if
he assaulted somebody?

MORALES: Yes.  . . .   Detective Alston went to my job on
that Friday and told me that during the time he was gone that he sexually
assaulted someone.

DEFENSE COUNSEL: Judge, I’m going to — that’s hearsay.

THE STATE: Judge, he opened the door to this whole chain of
events of why she kicked him out.

THE COURT: I’ll overrule the objection.

THE STATE: Now, . . .  [Defense Counsel] asked you if you
were mad at him because he cheated on you.  Can you explain to the jury what
you mean when you say he cheated on you?  What happened.

MORALES: Because when he was trying to get back with me — I
mean, after he went to jail, he wrote me and told me that he never did anything
wrong, that everybody is going to see that he was innocent.  And to me — I
mean, I wasn’t going to take him back because that’s just like cheating on me.

THE STATE: Innocent of what? What’s just like cheating on
you?

MORALES: When he assaulted that girl.

THE STATE: Okay.  What are you talking about when he
assaulted that girl?

DEFENSE COUNSEL: Judge, I’m going to object.  This is
getting into extraneous offenses not before the Court.

Outside the presence of the
jury, defense counsel objected to Morales testifying about the alleged sexual
assault, and argued that it constituted a violation of Rules 404(b) and 403.

THE COURT: Well, I — I’m going to overrule the defense’s
objections.

THE STATE: All right.  Now, Ms. Morales, when the defense
attorney was asking you about being mad about him cheating on you, what was the
— what was he talking about?  What happened?

MORALES: I was more mad of [sic] him trying to get back at
[sic] me knowing that he sexually assaulted somebody and him saying that he
didn’t do it.  But to me that’s like cheating.

THE STATE: Okay.  When did you learn of this new sexual
assault?

MORALES: It was January — June the 5th.

THE STATE: Was it when Detective Alston came to your job?

MORALES: Yes.

Rule 33.1 of the Texas Rules of Appellate Procedure
provides that an objection must be timely and sufficiently specific to make the
trial court aware of the complaint, unless the specific grounds were apparent
from the context.  Tex. R. App. P. 33.1(a)(1)(A); Berry, 233 S.W.3d at
857.  Appellant’s objections under Rules 404(b) and 403 were untimely because they
were made after Morales had already testified several times regarding the
alleged sexual assault.  See Berry, 233 S.W.3d at 857 (complaint that
admission of evidence of “hidden pregnancies” constituted error was waived
because objection was untimely when it was made after witness “had already
testified that there were other hidden pregnancies.”).  Because appellant did
not make a timely objection under either rule, he failed to preserve any
alleged error.  Accordingly, we overrule appellant’s third issue.

Conclusion

We affirm the trial court’s judgment.

 

                                                                                    

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

 

 

Panel consists of Justices Frost,
Boyce, and Sullivan.

Do Not Publish — Tex. R. App. P. 47.2(b). 

 









[1] Chapter 62 of the Texas Code of Criminal Procedure
governs sex offender registration.  A person commits a felony offense when he
is required to register and fails to comply with any requirement of chapter
62.  Tex. Code Crim. Proc. Ann. art. 62.102(a) (Vernon 2006).

 





[2] See id. art. 62.055(a)
(Vernon Supp. 2009).





[3]
See id.





[4]
See id. art. 62.059 (Vernon
2006).





[5] This appeal was transferred to the Fourteenth Court
of Appeals from the Tenth Court of Appeals. In cases transferred by the Supreme
Court of Texas from one court of appeals to another, the transferee court must
decide the case in accordance with the precedent of the transferor court under
principles of stare decisis if the transferee court’s decision otherwise would
have been inconsistent with the precedent of the transferor court.  See Tex.
R. App. P. 41.3.

 





[6]
“‘Relevant evidence’ means evidence having any tendency to make the existence
of any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence.” Tex. R. Evid.
401.





[7]
We note that Melendez testified only that
appellant worked for him as a painter, and that he did not know appellant was a
sex offender when he hired appellant.  At that time, evidence of appellant’s
employment already was before the jury because Alston testified earlier during
trial that he found appellant at a job after Morales gave him information about
appellant’s employer.  Also, the fact that appellant failed to inform the Waco
Police Department that he was no longer unemployed, even though he went several
times to the Police Department to update his registration, was elicited earlier
in the trial during Alston’s testimony.  Alston testified, without objection,
that when he was looking for appellant in June 2007, appellant’s registration
indicated that he was still unemployed.  Alston also testified, without
objection, that based on his investigation he sought two arrest warrants for
appellant “[o]ne for failure to update his registration as far as an address
change and the other was failing to update his registration as far as
employment.”  Appellant waived his complaint that the trial court improperly
admitted evidence regarding his employment because he failed to object when
Alston testified about his employment and failure to register his employment.  See
Tex. R. App. P. 33.1(a); see also Hughes v. State, 878 S.W.2d 142, 156
(Tex. Crim. App. 1992) (en banc) (As a general rule, a complaint regarding
improperly admitted evidence is waived if the same evidence is introduced
elsewhere during trial without objection.).  Even if appellant had preserved
his complaint, we conclude that the trial court did not err in admitting
evidence regarding his employment.